**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| CAREY COURTRIGHT, individually, and on behalf of K.C., a Minor, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:24-CV-04055-BCW |
| EPIC GAMES, INC., ROBLOX CORPORATION, MOJANG STUDIOS, | ) |
| MICROSOFT CORPORATION, META | ) |
| PLATFORMS, INC., GOOGLE LLC, | ) Judge Brian C. Wimes |
| ANOTHER AXIOM, INC., REC ROOM, | ) |
| INC., VRCHAT INC., BANANA | ) |
| ANALYTICS, LLC, | ) |
| and JANE & JOHN DOE I-XX, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF GOOGLE LLC, MICROSOFT
CORPORATION, META PLATFORMS, INC., AND ROBLOX CORPORATION'S
<u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................... 5

    A.    Microsoft's Xbox Platform, Google Play, and Meta's Quest Platform ................. 5

    B.    Roblox's Social Gaming Platform ........................................................ 8

LEGAL STANDARD ............................................................................................... 10

ARGUMENT ............................................................................................................ 10

    I.    Section 230 Still Bars All of Plaintiff's Claims Against the Platform
        Defendants. ............................................................................................ 10

    A.    The Platform Defendants Are Providers of "Interactive Computer
        Services." .............................................................................................. 12

    B.    Plaintiff's Claims Treat the Platform Defendants as Publishers........................... 12

        1.    Plaintiff's Allegations Target Quintessential Publishing Activity........... 13

        2.    Plaintiff Cannot Plead Around Section 230 by Relabeling Her
            Claims. ...................................................................................... 16

    C.    The Video Games at Issue Were Created and Developed by Third Parties. ........ 20

    D.    Section 230 Continues to Bar the Claims Against Roblox ................................... 23

    II.    The First Amendment Continues to Bar Plaintiff's Claims Against the
        Platform Defendants. ............................................................................ 26

    III.    In the Alternative, Plaintiff's Claims Should Be Dismissed for Continued
        Failure to State a Claim........................................................................ 30

    A.    All of Plaintiff's Claims Still Fail Because the Platform Defendants Did
        Not Proximately Cause K.C.'s Alleged Injuries. ................................................ 32

    B.    The Amended Complaint Does Not Cure the Other Defects in Plaintiff's
        Product Liability Claims. ...................................................................... 34

        1.    Plaintiff Cannot State a Product Liability Claim Because the
            Platform Defendants' Services Are Not "Products" ................................ 34

        2.    Plaintiff's Product Liability Claims Impermissibly Target the
            Platform Defendants' Dissemination of Information .............................. 35

        3.    Even If Product Liability Law Applied, Plaintiff Has Not Alleged
            Any Defect with the Platform Defendants' Services ............................... 37

    C.    Plaintiff Still Does Not State a Negligence Claim. .............................................. 38

1. Missouri Law Imposes No Duty To Protect From Or Warn About Third-Party Harms. ................................................................................. 38

2. Plaintiff's Negligence Per Se Theory Fails. ................................. 41

IV. The Amended Complaint Does Not Cure the Defects in Plaintiff's Fraud-Based Claims. ................................................................................................ 43

A. Plaintiff's Misrepresentation Claims (Counts VII–IX) Still Do Not Satisfy Rule 9(b). ........................................................................................ 43

B. Plaintiff Still Does Not State Any Claim for Deceit/Fraudulent Omission or Nondisclosure or Fraudulent Concealment (Counts VII–VIII). ...................... 47

V. Plaintiff's Remaining Claims Against the Platform Defendants Still Fail. .......... 49

VI. The Amended Complaint Should Be Dismissed with Prejudice ......................... 49

CONCLUSION ....................................................................................................... 49

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ACLU of Ill. v. Alvarez,*
    679 F.3d 583 (7th Cir. 2012) ............................................24

*Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC,*
    949 F.3d 417 (8th Cir. 2020) ............................................46

*Andes v. Albano,*
    853 S.W.2d 936 (Mo. 1993) ............................................48

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................10

*Bank of Am., N.A. v. Knight,*
    725 F.3d 815 (7th Cir. 2013) ............................................30

*Barnes v. Yahoo!, Inc.,*
    570 F.3d 1096 (9th Cir. 2009) ........................................10, 11, 12, 16

*Batek v. Curators of Univ. of Missouri,*
    920 S.W.2d 895 (Mo. 1996) ............................................48

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................10

*Blake v. Career Educ. Corp.,*
    2009 WL 140742 (E.D. Mo. Jan. 20, 2009) ............................................43

*Blue Cross & Blue Shield N.C. v. Rite Aid Corp.,*
    519 F. Supp. 3d 522 (D. Minn. 2021) ............................................48

*Brown v. Ent. Merchs. Ass'n,*
    564 U.S. 786 (2011) ........................................24, 26, 29

*Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.,*
    519 F.3d 666 (7th Cir. 2008) ............................................32

*Clark v. Olson,*
    726 S.W.2d 718 (Mo. 1987) ............................................44

*Coffee v. Google, LLC,*
    2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ........................................12, 15, 16, 23

iv

*Cohen v. Facebook, Inc.*,
  252 F. Supp. 3d 140 (E.D.N.Y. 2017),
  *aff'd in part, Force*, 934 F.3d 53 ................................................................................20

*Crosby v. Twitter, Inc.*,
  921 F.3d 617 (6th Cir. 2019) ......................................................................................32

*Dancin Dev., L.L.C. v. NRT Missouri, Inc.*,
  291 S.W.3d 739 (Mo. Ct. App. 2009)..........................................................................44

*Day v. TikTok, Inc.*,
  2022 WL 595745 (N.D. Ill. Feb. 28, 2022) ..................................................................19

*DeCastro v. Hot Springs Neurology Clinic, P.A.*,
  107 F.4th 813 (8th Cir. 2024) ......................................................................................42

*Doe by & through Doe v. Ozark Christian Coll.*,
  579 S.W.3d 220 (Mo. Ct. App. 2019)......................................................................38, 40

*Doe ex rel. Doe v. Grindr, LLC*,
  2023 WL 7053471 (M.D. Fla. Oct. 26, 2023),
  *appeal docketed*, No. 23-13874 (11th Cir. Nov. 28, 2023) ...........................................17, 20

*Doe v. Grindr Inc.*,
  709 F. Supp. 3d 1047 (C.D. Cal. 2023),
  *appeal docketed*, No. 24-475 (9th Cir. Jan. 29, 2024)....................................................17

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ......................................................................................18

*Dowbenko v. Google Inc.*,
  582 F. App'x 801 (11th Cir. 2014) ..........................................................................23, 24

*Dyroff v. Ultimate Software Grp.*,
  934 F.3d 1093 (9th Cir. 2019) .............................................................................. *passim*

*E. Coast Test Prep LLC v. Allnurses.com, Inc.*,
  971 F.3d 747 (8th Cir. 2020) ..................................................................11, 22, 23, 25

*E-Shops Corp. v. U.S. Bank Nat. Ass'n*,
  795 F. Supp. 2d 874 (D. Minn. 2011),
  *aff'd*, 678 F.3d 659 (8th Cir. 2012)..............................................................................43

*Earley v. Dunn*,
  670 S.W.3d 47 (Mo. Ct. App. 2023)........................................................................39, 40

*Eberhart v. Amazon.com, Inc.*,
  325 F. Supp. 3d 393 (S.D.N.Y. 2018)..........................................................................35

*Ent. Software Ass'n v. Blagojevich*,
469 F.3d 641 (7th Cir. 2006) ........................................................27

*Estate of B.H. v. Netflix, Inc.*,
2022 WL 551701 (N.D. Cal. Jan. 12, 2022),
*aff'd*, 2024 WL 808797 (9th Cir. Feb. 27, 2024)................................36

*Estate of Bride v. Yolo Technologies, Inc.*,
112 F.4th 1168 (9th Cir. 2024) ................................................17, 18

*Evans v. Blanton Constr. Co.*,
770 F. App'x 322 (8th Cir. 2019) ..................................................10

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) (en banc) ...........................11, 14, 24

*Fed. Agency of News LLC v. Facebook, Inc.*,
432 F. Supp. 3d 1107 (N.D. Cal. 2020) ........................................15

*Fields v. Twitter, Inc.*,
881 F.3d 739 (9th Cir. 2018) ........................................................33

*Force v. Facebook, Inc.*,
934 F.3d 53, 64 (2d Cir. 2019).............................................. *passim*

*Free Kick Master LLC v. Apple Inc.*,
140 F. Supp. 3d 975 (N.D. Cal. 2015) ..........................................12

*Freight House Lofts Condo Ass'n v. VSI Meter Servs., Inc.*,
402 S.W.3d 586 (Mo. Ct. App. 2013)............................................32

*Freitas v. Wells Fargo Home Mortg., Inc.*,
703 F.3d 436 (8th Cir. 2013) ..................................................43, 44

*Ginsberg v. Google Inc.*,
586 F. Supp. 3d 998 (N.D. Cal. 2022) .....................................20, 40

*Goddard v. Google, Inc.*,
2008 WL 5245490 (N.D. Cal. Dec. 17, 2008).................................26

*Goldman v. Tapestry, Inc.*,
501 F. Supp. 3d 662 (E.D. Mo. 2020).............................................45

*Gorog v. Best Buy Co.*,
760 F.3d 787 (8th Cir. 2014) ........................................................10

*Greater Hous. Transp. Co. v. Uber Techs., Inc.*,
155 F. Supp. 3d 670 (S.D. Tex. 2015)............................................46

vi

*Green v. Am. Online (AOL)*,
    318 F.3d 465 (3d Cir. 2003)...........................................................................18

*Grossman v. Rockaway Twp.*,
    2019 WL 2649153 (N.J. Super. Ct. June 10, 2019).........................................35

*GWG DLP Funding V, LLC v. PHL Variable Ins. Co.*,
    54 F.4th 1029 (8th Cir. 2022) .........................................................................49

*H & Q Properties, Inc. v. Doll*,
    2014 WL 2919139 (D. Neb. June 26, 2014),
    *aff'd*, 793 F.3d 852 (8th Cir. 2015) ................................................................49

*Hammers v. Farm Bureau Town & Country Ins. Co. of Missouri*,
    792 S.W.2d 19 (Mo. Ct. App. 1990).................................................................39

*Hartman v. L-3 Communications EOTech, Inc.*,
    2018 WL 4737261 (E.D. Mo. Oct. 2, 2018) ....................................................37

*Heffernan v. Reinhold*,
    73 S.W.3d. 659 (Mo. Ct. App. 2002)................................................................32

*Hennessey v. Gap, Inc.*,
    86 F.4th 823 (8th Cir. 2023) ...........................................................................44

*Herceg v. Hustler Mag., Inc.*,
    814 F.2d 1017 (5th Cir. 1987) ........................................................................30

*Herrick v. Grindr LLC*,
    765 F. App'x 586 (2d Cir. 2019) ...............................................16, 17, 18, 20

*Hinton v. Amazon.com.dedc, LLC*,
    72 F. Supp. 3d 685 (S.D. Miss. 2014)..............................................................15

*Hobbs v. Boy Scouts of Am., Inc.*,
    152 S.W.3d 367 (Mo. Ct. App. 2004)...............................................................34

*Hunt v. Guarantee Elec. Co. of St. Louis*,
    667 S.W.2d 9 (Mo. Ct. App. 1984)...................................................................35

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*,
    687 F. Supp. 2d 897 (W.D. Mo. 2009) ............................................................43

*In re Crop Inputs Antitrust Litig.*,
    --- F. Supp. 3d ---, 2024 WL 4188654 (E.D. Mo. Sept. 13, 2024) ................3, 30

*In re Facebook, Inc.*,
    625 S.W.3d 80 (Tex. 2021)..........................................................................17, 18

*In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*,
    966 F. Supp. 1525 (E.D. Mo. 1997),
    *aff'd sub nom. Briehl v. Gen. Motors Corp.*,
    172 F.3d 623 (8th Cir. 1999) ...................................................................43, 48

*In re NationsMart Corp. Sec. Litig.*,
    130 F.3d 309 (8th Cir. 1997) ...........................................................................47

*In re Navarre Corp. Sec. Litig.*,
    299 F.3d 735 (8th Cir. 2002) ...........................................................................45

*J&B Tankers, Inc. v. Navistar Int'l Corp.*,
    539 F. Supp. 3d 955 (E.D. Ark. 2021) .............................................................45

*Jackson v. Airbnb, Inc.*,
    639 F. Supp. 3d 994 (C.D. Cal. 2022) .............................................................35

*Jane Doe No. 1 v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016)...............................................................................14

*Johnson v. Arden*,
    614 F.3d 785 (8th Cir. 2010) ..................................................................... *passim*

*Johnston v. Warren County Fair Ass'n, Inc.*,
    110 F.3d 36 (8th Cir. 1997) ..............................................................................39

*Jones v. Dirty World Ent. Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) .......................................................................21, 25

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) .......................................................16, 21, 22, 25

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014).................................................14, 21, 25, 40

*Kutilek v. Union Pac. R.R.*,
    454 F. Supp. 2d 871 (E.D. Mo. 2006)..............................................................33

*L.H. v. Marriott Intl., Inc.*,
    604 F. Supp. 3d 1346 (S.D. Fla. 2022) ............................................................12

*L.W. ex rel. Doe v. Snap Inc.*,
    675 F. Supp. 3d 1087 (S.D. Cal. 2023)......................................................11, 19

*Lawton v. Hyundai Motor Am., Inc.*,
    2024 WL 2318623 (W.D. Mo. May 20, 2024) .....................................32, 38, 40

*Lockhart v. Carlyle*,
    585 S.W.3d 310 (Mo. Ct. App. 2019)................................................................38

*Lowe* v. *SEC*,
    472 U.S. 181 (1985)..........................................................................................45

*M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*,
    809 F. Supp. 2d 1041 (E.D. Mo. 2011)..........................................13, 15, 16, 23

*Martinez v. Kilroy Was Here LLC*,
    551 S.W.3d 491 (Mo. Ct. App. 2018)..............................................................41

*Miller as Next Friend for Rippeto v. City of St. Louis*,
    2024 WL 1366797 (E.D. Mo. March 31, 2024) ..............................................31

*Moody v. NetChoice, LLC*,
    144 S. Ct. 2383 (2024)................................................................3, 26, 27, 29

*Moore v. Compass Group USA, Inc.*,
    2022 WL 4598558 (E.D. Mo. Sept. 30, 2022)..........................................30, 31

*Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*,
    406 F.3d 1052 (8th Cir. 2005) .........................................................................47

*N.A.A.C.P. v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982)..........................................................................................30

*N.M. ex rel. Balderas v. Tiny Lab Prods.*,
    457 F. Supp. 3d 1103 (D.N.M. 2020) ..............................................................42

*Neeley v. NameMedia, Inc.*,
    2010 WL 5677069 (W.D. Ark. Dec. 16, 2010) ..............................................25

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ...........................................................................11

*NetChoice v. Bonta*,
    113 F.4th 1101 (9th Cir. 2024) .............................................................3, 28, 29

*Nigro v. Rsch. Coll. Of Nursing*,
    876 S.W.2d 681 (Mo. Ct. App. 1994)..............................................................48

*Ochoa v. Zeroo Gravity Games LLC*,
    2023 WL 4291974 (C.D. Cal. Feb. 1, 2023)....................................................34

*Patterson Oil Co. v. Verifone, Inc.*,
    2016 WL 6149594 (W.D. Mo. Oct. 19, 2015)..................................................48

*Pippin v. Hill-Rom Co., Inc.*,
    615 F.3d 886 (8th Cir. 2010) ................................................................39

*Roca Labs, Inc. v. Consumer Opinion Corp.*,
    2014 WL 6389657 (M.D. Fla. Nov. 16, 2014) ...............................33

*Rodriguez v. OfferUp, Inc.*,
    2019 WL 13247290 (M.D. Fla. Aug. 29, 2019) ......................18, 19

*Sanders v. Acclaim Ent., Inc.*,
    188 F. Supp. 2d 1264 (D. Colo. 2002).....................................36, 40

*Schaller Telephone Co. v. Golden Sky Sys., Inc.*,
    298 F.3d 736 (8th Cir. 2002) ...............................................................45

*Smith v. California*,
    361 U.S. 147 (1959)........................................................................26, 29

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011)..................................................................................26

*Stayart v. Yahoo! Inc.*,
    651 F. Supp. 2d 873 (E.D. Wis. 2009),
    *aff'd*, 623 F.3d 436 (7th Cir. 2010) ...................................................24

*Stein v. Novus Equities Co.*,
    284 S.W.3d 597 (Mo. Ct. App. 2009)...............................................46

*Summerhill v. Terminix, Inc.*,
    637 F.3d 877 (8th Cir. 2011) ...............................................................43

*Telescope Media Grp. v. Lucero*,
    936 F.3d 740 (8th Cir. 2019) ...............................................................29

*Thompson v. Brown & Williamson Tobacco Corp.*,
    207 S.W.3d 76 (Mo. Ct. App. 2006)..................................................20

*Tucker v. Gen. Motors LLC*,
    58 F.4th 392 (8th Cir. 2023) ................................................................44

*U.S. ex rel. Joshi v. St Luke's Hosp., Inc.*,
    441 F.3d 552 (8th Cir. 2006) .......................................................43, 44

*United States v. EZ Lynk SEZC*,
    2024 WL 1349224 (S.D.N.Y. Mar. 28, 2024) .....................21, 22, 25

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007).................................................................14

*Video Software Dealers Ass'n v. Webster*,
    968 F.2d 684 (8th Cir. 1992) ........................................29

*Volokh v. James*,
    656 F. Supp. 3d 431 (S.D.N.Y. 2023)...............................28

*Weinberg v. City of Chicago*,
    310 F.3d 1029 (7th Cir. 2022) ......................................26

*Wieland v. Owner-Operator Servs., Inc.*,
    540 S.W.3d 845 (Mo. 2018) .........................................39

*Winter v. Facebook, Inc.*,
    2021 WL 5446733 (E.D. Mo. Nov. 22, 2021)........................12

*Winter v. G.P. Putnam's Sons*,
    938 F.2d 1033 (9th Cir. 1991) ....................................35, 36

*Wozniak v. YouTube, LLC*,
    100 Cal. App. 5th 893 (2024),
    *as modified on denial of reh'g* (Apr. 2, 2024) ................17, 18, 19

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ....................................2, 12

*Ziencik v. Snap, Inc.*,
    2023 WL 2638314 (C.D. Cal. Feb. 3, 2023)..........................35

*Zubres Radiology v. Providers Ins. Consultants*,
    276 S.W.3d 335 (Mo. Ct. App. 2009)...............................47

## STATUTES

Children's Online Privacy Protection Act
    15 U.S.C. § 6501................................................41

47 U.S.C. § 230............................................... *passim*

Missouri Merchandising Practices Act ...............................44

## RULES

16 C.F.R. pt. 312.................................................42

Fed. R. Civ. P. 9(b) ......................................... *passim*

Fed. R. Civ. P. 10(c) .............................................2

## MISCELLANEOUS

Restatement (Second) of Torts § 315.................................................................................................39

Restatement (Third) of Torts: Prod. Liab. § 19 (Am. L. Inst. 1998) ......................................34, 35

**INTRODUCTION**

Despite tipping the scales at over 250 pages, Plaintiff's Amended Complaint cures none of the problems identified in the Platform Defendants' prior Motion to Dismiss—and only introduces more by engaging in even more impenetrable group pleading. Plaintiff still seeks to impose broad-based liability on the distribution of video games—recognized by the Supreme Court as expressive speech—because she believes that speech is too enticing, engaging, and purportedly "addictive." Plaintiff has sued not only the developers that designed the games, but also online platforms through which the games can be downloaded and, in some instances, played. Plaintiff's claims are the digital equivalent of suing a bookstore or video library for distributing or facilitating access to allegedly harmful books or movies. Plaintiff's effort to extend Missouri tort law to curtail the dissemination of constitutionally protected expression should be rejected as a matter of law.

This motion to dismiss is filed on behalf of the four online platforms[1] sued in this case: Google LLC, Microsoft Corporation, Meta Platforms, Inc., and Roblox Corporation, collectively the "Platform Defendants."[2] Plaintiff does not allege any facts indicating that the Platform Defendants had any role in creating or designing the third-party video games at issue: *Fortnite*, *Minecraft*, *Gorilla Tag*, *Rec Room*, *VRChat*, *Capuchin*, and other unidentified games made available through Roblox. Instead, Plaintiff continues to concede that the games were created and developed by third parties—the Developer Defendants. *See* Amended and Supplemental Complaint (ECF No. 138, the "Amended Complaint" or "AC") ¶¶ 58, 61, 64, 73, 81, 84, 87.

---

[1] "Platform," as used in this Brief, includes applications (apps), online services, marketplaces, storefronts, and/or websites operated by the Platform Defendants through which third-party content, including video games, is made available to users.

[2] Meta and Microsoft (along with Mojang) each previously filed motions to compel arbitration. ECF Nos. 121, 130. They thus join this brief in the alternative. Meta and Microsoft do not waive, and specifically assert, their rights under their arbitration agreements, including any appellate rights to have the proper forum resolved before any claims proceed on the merits in court.

1

Plaintiff nevertheless seeks to hold the Platform Defendants liable for making the third-party games available on their platforms.

The Developer Defendants' arguments for dismissal in their motion to dismiss (the "Developers' Brief") also require dismissal of the claims against the Platform Defendants, and the Platform Defendants incorporate those arguments here. *See* Fed. R. Civ. P. 10(c).[3] But despite amending the complaint with the benefit of the Platform Defendants' prior Motion to Dismiss (ECF Nos. 126–127), Plaintiff's claims continue to fail for several additional and independent reasons:

*First*, nothing in the Amended Complaint rescues Plaintiff's claims from Section 230 of the Communications Decency Act, 47 U.S.C. § 230, which prohibits plaintiffs from holding online service providers like the Platform Defendants "legally responsible for information that third parties created and developed." *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010). Under this provision, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred." *Id*. at 792 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330–31 (4th Cir. 1997)). This is a paradigmatic Section 230 case, and the statute forecloses Plaintiff's effort to hold the Platform Defendants liable for allowing users to access, play, or otherwise engage with the third-party games at issue.

---

[3] Consistent with the Consent Motion to Set Consolidated Briefing Schedule and Extend Page Limits and the Court's subsequent Order, ECF Nos. 143, 145, Microsoft addresses the claims against it relating to Xbox services in this brief and addresses the claims against it relating to *Minecraft* in the separate motion titled "Motion To Dismiss Plaintiff's First Amended Complaint of Defendants Epic Games, Inc., Mojang Studios, Microsoft Corp., Another Axiom Inc., Rec Room Inc., Banana Analytics, LLC, and VRChat Inc.," along with the suggestions in support of that motion. Pursuant to Federal Rule of Civil Procedure 10(c), Microsoft adopts all arguments made in that motion and supporting brief.

2

*Second*, the First Amendment separately protects the Platform Defendants for their role in publishing the third-party games to the public, and the Amended Complaint offers no basis to evade this protection. Video games are creative works entitled to full constitutional protection, and it is equally well established that the First Amendment shields platforms that publish, present, and curate speech created by others. *See Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2402 (2024) ("organizing and presenting" "third-party speech" is "expressive activity of its own" protected by the First Amendment). Plaintiff's effort to hold the Platform Defendants liable for the video games they disseminate—which would require them to monitor, suppress, and speak (or "warn") about those games, thereby both chilling and compelling speech—runs afoul of the First Amendment. *E.g.*, *NetChoice v. Bonta*, 113 F.4th 1101, 1119–21 (9th Cir. 2024) (applying First Amendment to enjoin state law requiring online platforms to "opine on and mitigate the risk that children may be exposed to harmful or potentially harmful content").

*Third*, rather than bolstering any allegations against the Platform Defendants specifically, the Amended Complaint resorts to confusingly blending every defendant together through group or "shotgun" pleading. A complaint cannot assert multiple claims against multiple defendants without specifying which of the defendants are allegedly responsible for which acts or omissions. *See, e.g.*, *In re Crop Inputs Antitrust Litig.*, --- F. Supp. 3d ---, 2024 WL 4188654, at * 9 (E.D. Mo. Sept. 13, 2024). Virtually every allegation in the Amended Complaint is made against "Defendants" as an undifferentiated group, which is impermissible under settled law.

*Fourth*, even apart from these fatal, crosscutting defects, Plaintiff's claims fail as a matter of state law for the same reasons set forth in the prior Motion to Dismiss.

- All of Plaintiff's claims still fail because the Amended Complaint does not allege that the Platform Defendants' conduct proximately caused Plaintiff's purported

addiction injuries—a deficiency fatal to all of Plaintiff's claims. There is still no actual allegation as to which platform (if any) caused Plaintiff's minor child K.C.'s alleged addiction to the third-party games. But even if there were, offering third-party games is not a sufficient legal cause of the injuries alleged here.

- Plaintiff's product liability claims (Counts I–IV) still fail because neither the underlying games nor the platforms themselves are tangible "products" and because product liability law does not apply to the dissemination of speech and creative expression. Even if the platforms were products (and they are not), the claims would fail because Plaintiff does not identify a single purported design defect in any of the platforms, much less one responsible for K.C.'s alleged addiction to third-party video games.

- Plaintiff's negligence-based claims (Count V) still fail because (a) the Platform Defendants had no legal duty to protect Plaintiff from alleged harms stemming from third-party games; and (b) Plaintiff does not plausibly allege that the Platform Defendants violated any statutory law or that Plaintiff suffered injury as a result of any such violation.

- Plaintiff's fraud-based claims (Counts VII–IX) still fail because they identify no actionable alleged misrepresentations by the Platform Defendants, and certainly not with the particularity required by Fed. R. Civ. P. 9(b).

- Plaintiff's remaining claims (Counts VI, X–XII) should be dismissed for the same reasons those claims fail as to the Developer Defendants (*see* Developers' Brief § II.F–H).

Because the Platform Defendants identified each of these incurable defects in their original motion to dismiss, and because Plaintiff has not (and cannot) cure any of them, the Amended Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

K.C. is a 12-year-old child whose mother claims K.C. plays video games for "at least three [] hours per weekday and the majority of the weekend hours," "ha[ving] spent at least 500 hours" playing video games since age six. AC ¶¶ 99–100, 540. Although the Amended Complaint states that K.C. "play[s] video games" generally, it asserts without explanation that only certain video games—*Fortnite*, *Minecraft*, *Gorilla Tag*, *Rec Room*, *VRChat*, *Capuchin*, and some number of unidentified games made available through Roblox—have caused K.C. to become addicted to video games. *Id.* ¶¶ 3, 100, 223, 248, 290, 418, 454, 468, 532–533. Plaintiff generally claims K.C. "purchased and/or downloaded" these video games "using Xbox Store, Google Play, and/or Meta Store," that K.C. plays *Fortnite*, *Minecraft*, *Rec Room*, and unidentified games available on the Roblox platform "via an Xbox One and/or Xbox Series S console" and "on a smartphone using Google Play," and that K.C. plays *Rec Room*, *VRChat*, *Gorilla Tag*, and *Capuchin* "via an Oculus Quest." *Id.* ¶ 532.

### A.    Microsoft's Xbox Platform, Google Play, and Meta's Quest Platform

Microsoft, Google, and Meta offer popular online platforms and/or services—the Microsoft Xbox Store, Game Pass, and Cloud Gaming; Google Play; and the Meta Horizon Store and Meta Quest+—through which users can search for and download video games and non-video game apps. *Id.* ¶¶ 312–314, 370–371, 483–484. As before, although Plaintiff identifies devices on which K.C. plays the games at issue, *id.* ¶ 532, she does not specify the platforms on which K.C. actually downloaded each game, nor does she claim that K.C. only plays those particular games. *Id.* ¶¶ 532–533. The Amended Complaint also does not specify how often K.C. plays video games

5

on any particular platform. *See, e.g.*, *id.* ¶ 540 (generally alleging that K.C. has spent "at least 500 hours" playing the third-party games and/or using the Platform Defendants' platforms).

As with her original complaint, Plaintiff does not offer any facts indicating that Google, Meta, or Microsoft created or developed any of the third-party games, or played *any* role in designing the games' content.[4] Plaintiff's lone effort to address this issue in the Amended Complaint is to add the verbs "design" and "develop" to two conclusory paragraphs purporting to summarize the actions of certain Platform Defendants in connection with certain video games—but none of the nearly 900 other paragraphs in the Amended Complaint offers any facts supporting this new makeweight allegation.[5] And Plaintiff's other allegations unambiguously establish that the Developer Defendants, *not* the Platform Defendants, designed and developed the third-party games and their in-game content. *Id.* ¶¶ 58, 61, 64, 67, 73, 81, 84, 87, 130, 133–135, 142–143, 150. Yet the Amended Complaint asserts the same claims against the Platform Defendants as against the Developer Defendants, alleging the following:

***Making Third-Party Games Available***. The foundation of Plaintiff's claims against Microsoft, Google, and Meta continues to be that they provide an online platform "through which users can purchase and/or access thousands of video games" and download them on their devices. *Id.* ¶ 312 (as to the Xbox Store); *see also id.* ¶ 370 ("[t]hrough the Meta Store . . . users of any Oculus or Meta Quest headset are able to obtain a number of immersive games"); *id.* ¶ 484

---

[4] Plaintiff alleges that Microsoft played a role in developing one game, *Minecraft*. AC ¶ 65. That aspect of the Amended Complaint is addressed in the Developer Defendants' motion to dismiss. This motion to dismiss addresses the claims asserted against Microsoft relating to Xbox services.

[5] *See, e.g.*, AC ¶ 795 ("Mojang, Microsoft, and Google knowingly agreed to, coordinated their efforts, and carried out a shared plan and acts in furtherance of a common agreement to fraudulently and deceptively design, develop, manage, operate, test, produce, manufacture, label, market, advertise, promote, control, sell, supply, lease, distribute, and benefit from the harmful Fortnite video game product, and that caused Plaintiffs' injuries and damages."); *id.* ¶ 798 (alleging same string of 17 verbs as to RRI, Meta, and Google).

6

("[t]hrough Google Play, Google provides a product-mechanism for users to download video games and play them on Android mobile devices"). Plaintiff faults Microsoft and Google for "hous[ing]" allegedly "addictive video game[s]," *id.* ¶ 325, *see id.* ¶ 498, including, in the case of Microsoft, through a "constantly rotating library of games," *id.* ¶ 325, and faults Google and Meta for using unidentified features to "push[] users to make purchases through the" Google Play and Meta Horizon Store, respectively. *Id.* ¶¶ 379, 500. Plaintiff further asserts, with no support, that the Platform Defendants had "licensing agreements" with the Developer Defendants "to keep users . . . addicted to Defendants'" video games. *Id.* ¶¶ 53, 786, 810, 813.

***Allowing Third-Party Games to Offer Game Content for a Fee***. According to Plaintiff, once a game is downloaded, Microsoft, Google, and Meta each provide a "framework" for games to offer "in-game purchases" and "microtransactions." *Id.* ¶¶ 319, 373, 486. Plaintiff alleges that microtransactions include purchases of "in-game perks," *id.* ¶ 172, such as additional "features, skins, and objects" *id.* ¶¶ 290–291, and virtual in-game "loot boxes," which may contain prizes that can enhance the game experience, *id.* ¶ 143. But Plaintiff still does not (and cannot) allege that Microsoft, Google, or Meta create these in-game perks, that the so-called microtransactions work any differently for games than for other content available for purchase in applications published on defendants' platforms (such as fitness and productivity apps), or that these Platform Defendants do anything other than allow users to purchase content within the games that various developers have created.

Moreover, while Plaintiff alleges that K.C. "chronically spend[s] [] money" while playing video games and "has spent large sums of [] money . . . on in-game microtransactions and downloadable products" in the games, *id.* ¶ 544, she does not allege that K.C. actually engaged in any microtransactions through the Microsoft, Google, or Meta platforms. She instead vaguely

claims that Microsoft (*id.* ¶ 319), Google (*id.* ¶ 489), and Meta (*id.* ¶ 375) *generally* receive a percentage of revenue from transactions made via their platforms and that encouraging so-called in-game microtransactions is part of the *Developer Defendants*' plan to generate revenue, which allows those developers to make games available to download for free, *id.* ¶ 149.

*Failing to Warn Users of the Allegedly Addictive Nature of the Third-Party Games*. Plaintiff contends in similarly conclusory fashion that Microsoft, Meta, and Google knew and failed to warn users that unspecified "games being played" on their platforms were "designed to addict and harm users" and presented "inherent risks" to minors. *Id.* ¶¶ 331, 381, 496.

*Fraudulently Misrepresenting the Platforms and the Third-Party Games*. Plaintiff also claims, without specificity as to any particular platform or game, that Microsoft, Meta, and Google "misrepresented" their respective platforms and the third-party games they make available as "safe for use by minors." *Id.* ¶¶ 336, 387, 505. She cites a single statement by Microsoft—that "Microsoft markets . . . [the] Xbox Store[] as 'safer for the whole family' to use," *id.* ¶ 334—and no allegedly false or misleading statements by Meta or Google.

*Enabling User Communications*. Plaintiff alleges that Microsoft offers "[a] social media-akin feature permit[ting] users to add friends to a Friends list and then see what games your friends are using and/or invite them to join your game." *Id.* ¶ 322. But Plaintiff does not allege that K.C. used this feature or that it contributed to K.C.'s alleged addiction.

### B.    Roblox's Social Gaming Platform

Plaintiff correctly alleges that Roblox is an "online social gaming platform and game *creation system* that allows users to use games (or 'experiences') built within Roblox" and "*created by other users*." *Id.* ¶¶ 241–242, 244, 250–252 (emphasis added). Roblox does not itself create or develop games, but offers neutral tools that allow third-party users to design games. *Id.* (Roblox provides a "game creation system" that allows users "to create their own games," and "to

use games created by other users which includes allowing users to buy, sell, and create virtual items, accessories, and limited-availability products for use in gameplay"). Users' games are made available through the Roblox platform.[6] *Id.*

Plaintiff's allegations with respect to Roblox are most notable for what they lack. Plaintiff does not identify the specific games that K.C. played on the Roblox platform. Plaintiff does not allege that Roblox developed any of the third-party games that K.C. used, that K.C. used Roblox's "social-gaming aspect," or "voice chat feature," or that K.C. used Roblox's neutral game-creation tools. *Id.* ¶¶ 244, 259. Rather, Plaintiff contends that K.C. became "addicted" to playing games that other users created, with neutral tools available to Roblox's "over 66 million daily users and over 217 million monthly active users[.]" *Id.* ¶¶ 239, 241–242. Plaintiff alleges that the "constant variety" of games available on the Roblox platform "ensures that users are never bored nor grow tired of the product," and that it "keeps users 'hooked,' coming back daily to use the product." *Id.* ¶¶ 251–252. Plaintiff makes the same sets of allegations against Roblox as against Microsoft, Meta, and Google. She contends that Roblox should be held liable for: (1) making "addictive" user-created games available on its platform, *Id.* ¶¶ 241–242, 244, 250–252; (2) failing to warn consumers about these features, *id.* ¶ 264; (3) misrepresenting the user-created games as "safe for use by minors," young adults, and neurodivergent individuals, *id.* ¶ 265; and (4) providing social tools that allow players to interact "within the game[s]," *id.* ¶ 253, even though Plaintiffs do not allege K.C. used Roblox's social features or interacted with others within its platform.

Plaintiff also faults Roblox for allowing players to make "in-game purchases and product upgrade microtransactions … using Robux, the game's virtual currency." *Id.* ¶ 245. Plaintiff does

---

[6] Plaintiff refers to Roblox games at times in the singular ("game"), but elsewhere makes clear she understands that Roblox hosts multiple games and is a "game creation system." AC ¶ 241.

not allege K.C. ever used Robux to buy anything, much less identify the content K.C. may have purchased or the amount of money K.C. may have spent.

## LEGAL STANDARD

A complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept as true the complaint's factual allegations, *id.* at 572, and draw reasonable inferences in favor of the plaintiff. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). But "conclusory" factual allegations are "not entitled to be assumed true," *Evans v. Blanton Constr. Co.*, 770 F. App'x 322, 323 (8th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)), and the court must reject "possib[le]" and "conceivable" claims if they are not "plausible." *Iqbal*, 556 U.S. at 679–80 (quoting *Twombly*, 550 U.S. at 570).

## ARGUMENT

### I.     Section 230 Still Bars All of Plaintiff's Claims Against the Platform Defendants.

The Platform Defendants detailed why Plaintiff's claims were barred by Section 230 in their prior dismissal motion, and nothing in Plaintiff's Amended Complaint does anything to change that result. To "promote the free exchange of information and ideas over the Internet," *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099–1100 (9th Cir. 2009) (cleaned up), Congress "established a general rule that providers of interactive computer services are liable only for speech . . . properly attributable to them," *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010) (cleaned up). Accordingly, Section 230(c)(1) provides that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

The Eighth Circuit has interpreted Section 230 "to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-

party." *Johnson*, 614 F.3d at 791 (cleaned up); *see also E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 971 F.3d 747, 752 (8th Cir. 2020) (Section 230 "immunizes providers of interactive computer services against liability arising from content created by third parties") (quoting *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc)); *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019) ("In light of Congress's objectives, the Circuits are in general agreement that the text of Section 230(c)(1) should be construed broadly in favor of immunity.").

Section 230 immunity is governed by a three-part test, barring any claim where: (1) the defendant is an "interactive computer service"; (2) the claim would treat the defendant as the "publisher" of content; and (3) that content was "provided by *another* information content provider." *Barnes*, 570 F.3d at 1100–01 (emphasis added); *accord Johnson*, 614 F.3d at 790 (applying same test). Despite amending her pleading, Plaintiff's allegations still unambiguously establish that each element is satisfied as to the Platform Defendants. And because Section 230 "protect[s] websites not merely from ultimate liability, but [also] from having to fight costly and protracted legal battles," *Roommates*, 521 F.3d at 1175 (en banc), the immunity attaches "at the earliest possible stage of the case," *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)—including motions to dismiss, *e.g.*, *Johnson*, 614 F.3d at 792; *see also Force*, 934 F.3d at 63 n.15.

Courts repeatedly apply Section 230 to dismiss similar claims seeking to hold online platforms liable for distributing allegedly harmful third-party content in the form of "apps," like the video games at issue here. *See, e.g.*, *L.W. ex rel. Doe v. Snap Inc.*, 675 F. Supp. 3d 1087, 1092 (S.D. Cal. 2023) (dismissing product liability, misrepresentation, and consumer protection claims against Google and Apple "stemming from allegations that [the] Snapchat application" available

on their platforms "is an inherently dangerous software product"); *Coffee v. Google, LLC*, 2022 WL 94986, at *1, *5 (N.D. Cal. Jan. 10, 2022) (dismissing consumer protection claims based on Google's distribution of game apps with "Loot Boxes"); *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 983 (N.D. Cal. 2015) (dismissing misrepresentation claims based on apps available on Android and Kindle devices). This Court should do the same here.

A.    **The Platform Defendants Are Providers of "Interactive Computer Services."**

Plaintiff continues to allege that the Platform Defendants offer "online," "cloud-based" digital stores through which users can "access," "download" and "stream" third-party video game applications. AC ¶¶ 116–117, 179, 312, 314–315, 370–371, 484–485, 542. But as the Platform Defendants previously explained (ECF No. 127 at 11), these allegations describe textbook "interactive computer services," because each Platform Defendant "provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). As courts have repeatedly held, platforms that make games and/or apps available for download are interactive computer services under Section 230. *E.g.*, *Coffee*, 2022 WL 94986, at *5 (Google's Play Store is an interactive computer service); *Free Kick Master*, 140 F. Supp. 3d at 981 (Amazon and Google app stores are "paradigmatic interactive computer services"); *Winter v. Facebook, Inc.*, 2021 WL 5446733, at *4 (E.D. Mo. Nov. 22, 2021) (video-sharing and social media applications are interactive computer services).

B.    **Plaintiff's Claims Treat the Platform Defendants as Publishers.**

Section 230 bars any lawsuit that seeks to hold a platform liable for its "exercise of traditional publisher functions," including "whether to publish, withdraw, postpone, or alter" third-party content, as Plaintiff's suit does with respect to third-party games. *Winter*, 2021 WL 5446733, at *4–5 (quoting *Zeran v. Am. Online, Inc.*, 139 F.3d 327, 330 (4th Cir. 1997)); *accord Barnes*, 570 F.3d at 1102; *L.H. v. Marriott Intl., Inc.*, 604 F. Supp. 3d 1346, 1363 (S.D. Fla. 2022) (Section

230 bars "claims holding the website liable for third-party content posted on its internet platform");
*Force*, 934 F.3d at 65 (noting Section 230's "capacious conception of what it means to treat a
website operator as the publisher" (cleaned up)). Despite being on notice of their Section 230
defense, Plaintiff doubles down on her claims to impose liability on the Platform Defendants for
merely disseminating third-party games. Section 230 bars these claims because that theory of
liability—and the substantive legal duty it would impose—targets quintessential publishing
activities. *See infra* § I.B.1. Each of Plaintiff's various causes of action—*e.g.*, product liability,
fraud, emotional distress—merely repackages that forbidden publisher liability under a different
pleading label. *See infra* § I.B.2.

1.     Plaintiff's Allegations Target Quintessential Publishing Activity.

The core theory underlying all of Plaintiff's claims is that by making the third-party games
available to users, the Platform Defendants failed to protect K.C. from alleged harms caused by
playing those games. *See, e.g.*, AC ¶¶ 325–326, 330, 379, 500, 579, 612, 633, 653, 675, 690, 699,
716, 719, 775, 784, 809, 824 (faulting Platform Defendants for allegedly designing their platforms
to "house" "addictive video game products"). This theory continues to run headlong into Section
230 because it is premised on the Platform Defendants' publication of "information originating
with third-party user[s] of the service." *Johnson*, 614 F.3d at 791. The Platform Defendants could
avoid liability only by declining to publish games that Plaintiff deems addictive, or by monitoring
all content available through their platforms to restrict or condition access to any game that
Plaintiff potentially deems "addictive." Section 230 bars such claims. *See M.A. ex rel. P.K. v. Vill.*
*Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1051 (E.D. Mo. 2011) ("service provider's
failure to intervene" to take down unlawful content "is immunized" by Section 230 (cleaned up));
*Force*, 934 F.3d at 65 (allegations that Facebook supplied third parties with "a platform and
communications services" and failed to delete content "fall[] within the heartland of what it means

13

to be the 'publisher' of information under Section 230(c)(1)"); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014) ("the very essence of publishing is making the decision whether to print or retract a given piece of content"); *Roommates*, 521 F.3d at 1170–74 (Section 230 was "enacted to protect websites" from "liability for failure to remove offensive content"). Plaintiff rehashes the same allegations in an effort to escape that conclusion, but none are viable.

*First*, Plaintiff alleges that the Platform Defendants designed their platforms to "attract users to purchase games" and "in-game products," and to "ensure minor users continually purchase addictive video game products." AC ¶¶ 320, 328, 378–379, 493, 499. This is a core publishing activity. A platform's decisions about how third-party content is presented, notifications about third-party content, and "features and functions" "meant to facilitate the communication and content of others" are all protected by Section 230. *Dyroff v. Ultimate Software Grp.*, 934 F.3d 1093, 1098 (9th Cir. 2019); *see also, e.g.*, *Force*, 934 F.3d at 66–67 ("arranging and distributing third-party information," along with use of tools "designed to match that information with a consumer's interests," is an "essential result of publishing"); *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 422 (1st Cir. 2007) (Section 230 protects decisions regarding the "construct and operation" of websites).

Indeed, "it would turn Section 230(c)(1) upside down" to hold that publishers of third-party content shed their statutory immunity by becoming especially adept at performing the functions of publishers. *Force*, 934 F.3d at 67. Courts thus hold that Section 230 bars claims that fault platforms for how they promote and organize third-party content. *See id.* at 66–67 (Section 230 protects decisions about "where on their sites . . . particular third-party content should reside and to whom it should be shown"); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016)

(choices "about what content can appear on the [platforms] and in what form" are "traditional publisher functions" protected by Section 230).

*Second*, Section 230 applies to claims that certain of the Platform Defendants provide game developers a "framework" to publish in-game content for which developers charge a fee—such as the ability to acquire "special characters with unique skills, or [] items" or "in-game premium item[s.]" AC ¶¶ 133, 145, 319, 373, 486. These allegations still seek to hold the Platform Defendants liable for publishing third-party content. Plaintiff does not allege that providing tools that allow developers to sell in-game content (which she calls "microtransactions") is itself illegal or tortious. Instead, Plaintiff faults the Platform Defendants for allowing such transactions because they supposedly render the Developers' creation and the Platforms' publication of such games profitable. *Id.* ¶¶ 133, 145, 319, 373, 376, 486, 490. But "there is no 'for-profit exception to § 230's'" protection. *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119 (N.D. Cal. 2020); *see, e.g.*, *Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d at 1050 ("[T]he fact that a website elicits online content for profit is immaterial; the only relevant inquiry is whether the interactive service provider 'creates' or 'develops' that content.") (cleaned up); *Hinton v. Amazon.com.dedc, LLC*, 72 F. Supp. 3d 685, 690 n.9 (S.D. Miss. 2014) ("website operator's . . . receipt of profits from online sales" does not "control[]" the Section 230 analysis). That is why, in a similar case, Section 230 barred claims based on Google's distribution of third-party apps containing loot boxes, even though Google earned revenue from their sale. *See Coffee*, 2022 WL 94986. Here, too, Plaintiff's allegation that game developers use the platforms' tools to sell users more in-game content does not take their claims outside of Section 230's protections because this is still a complaint about the content published by the platforms.

*Third*, Plaintiff cannot evade Section 230 by claiming Microsoft provides social communication tools "that allow users to play with and view the games played by friends and other users." AC ¶¶ 322, 324–325. These allegations target content created by third-party *users* and the social features Microsoft operates to facilitate the creation of that third-party content. Such claims impermissibly seek to hold Microsoft "liable for providing 'neutral assistance' in the form of tools and functionality" that help users communicate. *Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019); *see also Dyroff*, 934 F.3d at 1098 (Section 230 immunizes "tools meant to facilitate the communication and content of others"). Because such claims—even couched as addressing a platform's "design and operation"—boil down to attacking platforms for enabling the creation and exchange of third-party content, they are "inextricably linked to [the] alleged failure to edit, monitor, or remove" such content. *Herrick*, 765 F. App'x at 590–91; *see Barnes*, 570 F.3d at 1102 ("what matters" is whether "the duty that the plaintiff alleges" involves the defendant's exercise of editorial functions); *Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d at 1049 (Section 230 barred claims where defendant offered a "neutral tool that did nothing more than provide" a forum for communication (cleaned up)); *Coffee*, 2022 WL 94986, at *7 (same, where "Google did no more than provide neutral tools" to access third-party content).

2.     <u>Plaintiff Cannot Plead Around Section 230 by Relabeling Her Claims.</u>

Section 230's protections do not depend on "the name of the cause of action," but on "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101–02. Plaintiff cannot plead around this immunity where, at bottom, she seeks to "make [the Platform Defendants] liable for the content and consequences of the [third-party games]." *Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d at 1051, 1058 (rejecting plaintiff's attempts to "artfully and eloquently . . . phrase her allegations to avoid the reach of § 230"); *accord Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th

Cir. 2016) ("declin[ing] to open the door to . . . artful skirting" of Section 230). The Amended Complaint continues to allege the same causes of action based on the same alleged misconduct.

**Product Liability and Negligence Claims (Counts I, III, V).** Courts across the country have consistently held that Section 230 bars "claims alleging that defectively designed internet products allowed for transmission of harmful third-party content." *In re Facebook, Inc.*, 625 S.W.3d 80, 93, 94 (Tex. 2021) (Section 230 barred negligence and product liability claims alleging Facebook owed a duty to "protect [users] against recruitment into sex trafficking by other users"). That is because such claims allege that a platform owes a duty to a plaintiff because it "mere[ly]" "transmitted" certain "third-party content that harmed" the plaintiff. *Id.* at 93; *see, e.g., Wozniak v. YouTube, LLC*, 100 Cal. App. 5th 893, 912–13 (2024), *as modified on denial of reh'g* (Apr. 2, 2024) (negligent design); *Doe v. Grindr Inc.*, 709 F. Supp. 3d 1047, 1052 (C.D. Cal. 2023) (product defect and negligence based on allegations that app "facilitates the exchange of sexually explicit material"), *appeal docketed*, No. 24-475 (9th Cir. Jan. 29, 2024); *Herrick*, 765 F. App'x at 590 (manufacturing and design defect). Consistent with this broad consensus, in *Estate of Bride v. Yolo Technologies, Inc.*, 112 F.4th 1168, 1180 (9th Cir. 2024), the Ninth Circuit affirmed dismissal of product liability claims targeting an online application's allegedly "defective design," since the "harms" the plaintiffs alleged resulted from "harassing and bullying [third-party] posts" on the application. The claims treated the defendant "as a publisher of third-party content," since they "essentially fault[ed]" it "for not moderating content in some way, whether through deletion, change, or suppression." *Id.* at 1180–1182.

Plaintiff cannot plead around this rule by framing her claims as seeking to hold the Platform Defendants liable for their allegedly negligent "failure to implement any measures to protect" users from "the dangers posed by [their] products." *Facebook*, 625 S.W.3d at 93; *see Doe ex rel. Doe v.*

*Grindr, LLC*, 2023 WL 7053471, at *2 (M.D. Fla. Oct. 26, 2023), *appeal docketed*, No. 23-13874 (11th Cir. Nov. 28, 2023); *accord Estate of Bride*, 112 F.4th at 1179 (rejecting claims that app developer "failed to protect users") (cleaned up); *Wozniak*, 100 Cal. App. 5th at 912–13 (similar). Such claims are "merely another way of claiming that [the platform is] liable for publishing the communications" of third parties. *Doe v. MySpace, Inc.*, 528 F.3d 413, 419–20 (5th Cir. 2008).

Plaintiff's fundamental "product" theory is that the Platform Defendants make available video games created by third-party developers, and that *those games* allegedly harmed K.C. Section 230 bars liability on that theory no matter how it is framed.

**Fraud and Product Liability Claims Based on an Alleged Failure to Warn (Counts II, IV, V, VII, VIII, IX).** Section 230 likewise bars claims based on an alleged failure to warn, whether framed as sounding in product liability, negligence, or misrepresentation. Claims that a platform must add warnings to third-party content inescapably impose liability "for decisions relating to the monitoring" and "screening" of third-party content, *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003), issues that go "to the heart of 'publishing functions.'" *Rodriguez v. OfferUp, Inc.*, 2019 WL 13247290, at *3 (M.D. Fla. Aug. 29, 2019); *accord Estate of Bride*, 112 F.4th at 1180 (dismissing "failure to warn claim [that] faults [defendant] for not mitigating, in some way, the harmful effects" of third-party content); *Herrick*, 765 F. App'x at 591 (affirming dismissal of "failure to warn claim [that] is inextricably linked to [defendant's] alleged failure to edit, monitor, or remove the offensive content provided by [a third-party]"); *Facebook*, 625 S.W.3d at 94 ("The warnings Plaintiffs seek would only be necessary because of Facebook's allegedly inadequate policing of third-party content transmitted via its platforms.").

Permitting Plaintiff to avoid Section 230 with failure-to-warn claims "would allow essentially every state cause of action otherwise [barred] by section 230 to be pleaded as a failure

to warn of such information published by a defendant," which "runs counter" to established authority. *Wozniak*, 100 Cal. App. 5th at 914–15; *see also, e.g.*, *Rodriguez*, 2019 WL 13247290, at *3 (rejecting failure-to-warn claim as "artful pleading tactic" barred by Section 230); *Day v. TikTok, Inc.*, 2022 WL 595745, at *1 (N.D. Ill. Feb. 28, 2022) (rejecting claim that TikTok "did not put any warning" on sexually explicit third-party videos). Here, for example, the only way the Platform Defendants could comply with a purported duty to warn that their platforms "house addictive gaming products," *e.g.*, AC ¶¶ 332, 379, 500, is by monitoring every game they host to somehow determine which ones may (in anyone's view) be "addictive." Section 230 bars Plaintiff from imposing such a vague duty via state tort law.

Plaintiff's fraud-based claims only repackage her product liability theory, as they are primarily premised on the allegation that the Platform Defendants failed to disclose that their platforms were allegedly "designed to addict and harm users" and pose "inherent risks of abuse, addiction, and compulsive use." *E.g.*, AC ¶¶ 331–332, 381–382, 496, 500. The Amended Complaint does not identify any statement by Google or Meta that was supposedly false or misleading. As to Microsoft, it identifies only one alleged statement, that the Xbox Store is "safer for the whole family" (*id.* ¶ 334), an opinion not actionable in fraud. *Infra* § IV. And in all events, Section 230 bars Plaintiff's attempt to hold the Platform Defendants liable for allegedly failing to alert their users to the dangers purportedly posed by interacting with the third-party games they publish, even framed as fraud or violation of consumer protection laws. *See L.W.*, 675 F. Supp. 3d at 1095–96 (dismissing fraud and negligent misrepresentation claims against app platforms).

**Emotional Distress Claim (Count VI).** Plaintiff's emotional distress claim asserts harm supposedly caused by the Platform Defendants' dissemination of certain games, along with a wide variety of other games and third-party content. AC ¶¶ 325, 379, 501, 700. This, too, is a

19

quintessential publisher liability claim, and the label of "emotional distress" does not change that reality. *See, e.g.*, *Grindr*, 2023 WL 7053471, at *2 (dismissing emotional distress and negligence claims where theory of liability was "inextricably linked" to publication of third-party content); *Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1005 (N.D. Cal. 2022) (same, where "Google's alleged activity boil[ed] down to deciding whether to exclude material (Telegram) that a third party seeks to place in the online Play Store"); *Herrick*, 765 F. App'x at 591 (same).

**Conspiracy and In-Concert Liability Claims (Counts X, XI).** Finally, Plaintiff's conspiracy and in-concert liability claims also seek to fault the Platform Defendants for publishing the third-party games. Liberally construed, the Amended Complaint appears to allege that the Platform Defendants "conspired" and "acted in concert" with the Developer Defendants to "distribute," "supply," and "place addictive games" on their respective platforms. AC ¶¶ 790–801, 809–814. This is merely a conclusory restatement of Plaintiff's core publisher-liability theory, and it does nothing to sidestep Section 230's protections. *E.g.*, *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 160 (E.D.N.Y. 2017) (dismissing conspiracy claim based on Facebook's publication of third-party content), *aff'd in part, Force*, 934 F.3d 53.[7]

**C.    The Video Games at Issue Were Created and Developed by Third Parties.**

Section 230's requirement that the allegedly harmful content be provided by "another information content provider" is not plausibly in dispute. 47 U.S.C. § 230(c)(1); *id.* § 230(f)(3). Aside from adding the words "design" and "develop" to two conclusory paragraphs against the Platform Defendants (*see* AC ¶¶ 795, 798; *supra* at 7), Plaintiff does not plead a single fact that

---

[7] While it is clear that Plaintiff has no legally viable loss of consortium claim (Count XII) here, *see* Developers' Brief § II.G, any such claim would similarly be barred by Section 230 because it is premised on the harms allegedly caused by the Platform Defendants' publication of third-party content. AC ¶¶ 823–825; *cf. Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 112 (Mo. Ct. App. 2006) (holding that loss of consortium claim is "derivative only").

suggests that the Platform Defendants had *any* role in creating the third-party game content or were responsible for the games' design or development.[8] And any implication from Plaintiff's throw-in allegations that the Platform Defendants somehow played a role "in the creation of" certain third-party games is flatly "'contradicted by [the] more specific allegations' in the Complaint," which unambiguously establish that the Developer Defendants created the third-party games. *United States v. EZ Lynk SEZC*, 2024 WL 1349224, at *11 (S.D.N.Y. Mar. 28, 2024). As the Amended Complaint makes clear, the Developer Defendants themselves "manufactured," "designed," "developed," "prepared," and "assembled" the third-party games. *Compare* AC ¶¶ 58, 61, 64, 67, 73, 81, 84, 87, 130, 133–135, 142–143, 150 (describing allegedly addictive features and microtransactions that developers created and "built *into*," "*within*," and "*inside*" the games (emphases added)), *with id.* ¶¶ 311–312, 318, 370–371, 483–484 (alleging Platform Defendants provide platforms that allow users to download third-party games and other content). "[A] website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online." *Klayman*, 753 F.3d at 1358; *see Johnson*, 614 F.3d at 791 (applying Section 230 where service-provider defendant "did not originate the material that the Johnsons deem damaging"); *accord Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 414 (6th Cir. 2014) (Section 230 protects "taking actions (traditional to publishers) that are necessary to the display of unwelcome and actionable content"); *Kimzey*, 836 F.3d at 1271 ("proliferation and dissemination of content does not equal creation or development of content").

---

[8] As indicated above, Microsoft addresses the allegations relating to its alleged role in developing *Minecraft* in the concurrently filed Developer Defendants' motion to dismiss.

This remains true despite Plaintiff's general and wholly conclusory allegations that the Platform Defendants "conspired" with the Developer Defendants to "utilize the same patents … to keep users, including minors like K.C., addicted to Defendants' products." AC ¶¶ 53, 177, 690, 785–786, 810, 813. A plaintiff "fail[s] to plausibly allege that" service providers are "information content provider[s]" under Section 230 where "the sum total of the complaint's factual allegations plead[s] no more than a 'sheer possibility' that [defendants were] wholly or partly responsible for creating or developing" the material at issue. *E. Coast Test Prep*, 971 F.3d at 752. Plaintiff here has done even less: the Amended Complaint does not purport to identify any patent owned by or assigned to Google or Meta, and Plaintiff does not allege that the one patent assigned to Microsoft was used in any of the third-party games. AC ¶ 169(g). Such threadbare allegations are not remotely sufficient to transform the games into content created or developed by the Platform Defendants. *See EZ Lynk SEZC*, 2024 WL 1349224, at *11 (rejecting unsupported allegation that defendant "collaborated in the creation of" third-party content). "Were it otherwise, CDA immunity could be avoided simply by reciting a common line that user-generated statements are not what they say they are." *Kimzey*, 836 F.3d at 1268–69 (rejecting similar allegations that "the defendant fabricated content under a third party's identity").

Finally, Plaintiff's allegations that the Platform Defendants offer a "framework" for in-app billing, allowing developers to offer microtransactions (*i.e.*, other third-party content), AC ¶¶ 319, 373, 376, 486, 489–490, and providing developers with "tools, specifications, and requirements of compatibility and integration," *id.* ¶¶ 121–123, do not transform the Platform Defendants into information content providers. Just as "[t]he fact that a website elicits online content for profit is immaterial," so too is the fact that the Platform Defendants offer a way for the third-party game developers to profit from their work; "the only relevant inquiry is whether the interactive service

provider 'creates' or 'develops' that content." *Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d at 1050 (cleaned up); *accord E. Coast Test Prep.*, 971 F.3d at 752 (terms of service stating that provider may solicit and pay users for content does not render it an "information content provider"). Plaintiff does not, and could not, allege that the Platform Defendants, by providing general publishing functionality that allows game developers to sell in-game content, did anything to create or otherwise materially contribute to the allegedly addictive content of the third-party games. *See, e.g.*, *Coffee*, 2022 WL 94986, at *7 ("Because the facts alleged in the [Complaint] establish that the game apps and Loot Boxes downloaded by Plaintiff were created by third parties, and that [the Platform Defendants] did no more than provide neutral tools to all developers across the Play Store, the co-developer exception to § 230 . . . does not apply.").

### D. Section 230 Continues to Bar the Claims Against Roblox.

For similar reasons, Section 230 shields Roblox from liability on Plaintiff's claims. As discussed above, Roblox is indisputably an "interactive computer service" provider, and as with the other Platform Defendants, Plaintiff's claims seek to treat Roblox as a publisher. The fact that Plaintiff alleges that the third-party creators are other Roblox users rather than third-party video game developers does not make a difference; Plaintiff ultimately seeks to hold Roblox liable based on the diverse content created by third parties, not by Roblox. Likewise, for all the reasons explained above, Plaintiff cannot evade Section 230 by alleging that Roblox enables "microtransaction" purchases of third-party-created content. *See supra* § I.C. Claims based on Roblox's social features and interactivity also fail, as do Plaintiff's allegations that Roblox uses algorithms to "target users," AC ¶¶ 250–254, 685, 690, because they likewise treat Roblox as a publisher of third-party content. Courts routinely dismiss similar allegations under Section 230. *See, e.g.*, *Dowbenko v. Google Inc.*, 582 F. App'x 801 (11th Cir. 2014) (barring claims that algorithm manipulated display of search results); *Force*, 934 F.3d at 66 (barring claims based on

social media site's use of algorithms to arrange and display third-party information under Section 230); *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 885 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010) (noting that Yahoo!'s "proprietary algorithm" … "goes to the heart of Yahoo!'s role as an interactive computer service."); *Dyroff*, 934 F.3d at 1098 ("algorithms" considered website features and not content). In *Dowbenko*, for example, the plaintiff alleged that Google used "algorithms to manipulate its search results." *Dowbenko*, 582 F. App'x at 803. The Eleventh Circuit held, as relevant here, that the plaintiff's allegations that "Google manipulated its search results to prominently feature [a defamatory] article" did not defeat Google's immunity under Section 230 because those are traditional editorial functions. *Id.* at 805. Roblox likewise should be shielded from liability under Section 230 for its purported use of "algorithms" to display video game content to players.

To the extent Plaintiff may claim her injuries derive from the "ability" Roblox provides "users to create their own games" that is somehow independent of sharing or interacting with any user content, AC ¶¶ 251–252, Plaintiff does not allege K.C. created any games on Roblox or used any of its neutral game-creation tools, much less that K.C. was addicted to or harmed by doing so. And even if Plaintiff did, the First Amendment would bar those claims. *See* Developer Defendants' Brief at § I (discussing, among other cases, *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 798 (2011), and *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595–597 (7th Cir. 2012)).

Finally, the challenged games available to Roblox users are created by third-party users, not by Roblox. *Id.* ¶¶ 241–244. That Roblox provides users with neutral tools that certain users allegedly use to create and share addictive games does not defeat Section 230 immunity. *See Roommates*, 521 F.3d at 1169 (noting that "providing neutral tools to carry out what may be unlawful or illicit searches does not amount to 'development' for purposes of the immunity

exception"); *see also, e.g.*, *Klayman*, 753 F.3d at 1358. The Amended Complaint attempts to insert Roblox into the role of a content developer by alleging that Roblox "provides users video and written tutorials and instructions on how to use Roblox Corp.'s software systems, tools . . . including the use of monetization strategies." AC ¶ 241. But that allegation merely underscores the applicability of Section 230. Roblox is still not responsible for the development of users' games. Rather, Roblox's "game development system" makes available content-neutral tools to all users. *Id.* ¶¶ 241–244, 250–252. Plaintiff asserts that those neutral tools have been used to create games that are unduly engaging, something that (even if true) reflects the design choices of users who create the games, not of Roblox. *See, e.g.*, *id.* ¶¶ 250, 252, 262–263, 614. A gaming platform "does not become a developer of content when it provides neutral tools that a user exploits to create" their own gaming content. *Dyroff*, 934 F.3d at 1099; *see also Force*, 934 F.3d at 69–70 (same); *Jones*, 755 F.3d at 416 (same).

Plaintiff's conclusory allegations that Roblox "designs" the user-created games with "certain addictive properties" do not render it an "information content provider," and also contradict their (correct) allegations that third-party users design the games on the Roblox platform. AC ¶¶ 241–244. As discussed above, allegations that "plea[d] no more than a 'sheer possibility' that [a defendant] [is] wholly or partly responsible for creating or developing [the content]" are insufficient to avoid immunity under Section 230. *See E. Coast Test Prep*, 971 F.3d at 752; *see also, e.g.*, *Kimzey*, 836 F.3d at 1268 (similar); *EZ Lynk SEZC*, 2024 WL 1349224, at *11–12 (finding allegations of contribution insufficient). Users design the games, not Roblox. Users make choices about game content. The extent to which a game is engaging is thus a consequence of user choices. Roblox is not an "information content provider" for any game. *See, e.g.*, *Neeley v. NameMedia, Inc.*, 2010 WL 5677069, at *4 (W.D. Ark. Dec. 16, 2010) (Section

230 barred claim based on defendant offering a "tool" to "facilitate[] the expression of information" since "users ultimately determine[d] what content to post" with that tool (citation omitted)); *Goddard v. Google, Inc.*, 2008 WL 5245490, at *4 & n.3 (N.D. Cal. Dec. 17, 2008) (barring claim arising from provision of advertising tools absent allegation that Google "created or developed the offending content" or that "the creation of [the offending] content was anything less than voluntary" by third-party users).

* * *

Because the Platform Defendants readily satisfy the three-part test that governs Section 230 protections, the claims against them must be dismissed.

## II.    The First Amendment Continues to Bar Plaintiff's Claims Against the Platform Defendants.

The Platform Defendants again join the First Amendment arguments made by the Developer Defendants, which explain that the games and gaming content at issue is all speech protected from content-based tort liability. *Brown v. Ent. Merchants Ass'n*, 564 U.S. at 794; Developers' Brief § I. But First Amendment protections are not limited to those who create or originate speech, as both "the creation *and dissemination* of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) (emphasis added); *accord Brown*, 564 U.S. at 794 n.1 (First Amendment protects "creating, distributing, or consuming speech"); *Smith v. California*, 361 U.S. 147, 150 (1959) (First Amendment bars conviction of bookstore owner for housing and distributing obscene books); *cf. Weinberg v. City of Chicago*, 310 F.3d 1029, 1045 (7th Cir. 2022) ("The sale of a book is a form of expression").

Moreover, as the Supreme Court recently confirmed, online publishing platforms enjoy independent First Amendment rights when engaged in "compiling and curating others' speech." *Moody*, 144 S. Ct. at 2401. That is because "[d]eciding on the third-party speech that will be

included in or excluded from a compilation—and then organizing and presenting the included items—is expressive activity of its own." *Id*. at 2402; *see also id.* at 2400 ("expressive activity includes presenting a curated compilation of speech originally created by others").

Nothing in the Amended Complaint defeats the application of these First Amendment principles to bar Plaintiff's claims against the Platform Defendants. Regardless of the pleading label, these claims continue to be premised on the Platform Defendants' choices regarding what games (and other content) to publish on their platforms and how those games are presented to users. *Supra* § I.B.1. Plaintiff seeks to impose liability on the Platform Defendants for exercising their First Amendment rights to distribute protected third-party speech and to engage in protected "editorial discretion in the selection and presentation of content" on their platforms. *Moody*, 144 S. Ct. at 2402. But Plaintiff may not impose her own preferences on the way the Platform Defendants select and moderate content. *Id*. at 2408.

As the Developer Defendants explain, repackaging such challenges to speech and expression in the guise of product liability or failure-to-warn claims—or the language of addiction—makes no difference. Developers' Brief § I.B. Just as plaintiffs may not sue a bookstore for selling addictive books, they cannot evade the First Amendment by alleging the bookstore failed to warn the public that a popular book series may lead to an addiction to reading. *See, e.g.*, *Ent. Software Ass'n v. Blagojevich*, 469 F.3d 641, 653 (7th Cir. 2006) (affirming preliminary injunction of statute requiring video game retailers to label sexually explicit games). Indeed, requiring the Platform Defendants to post warnings about purported risks of games would itself be a form of compelled speech that would burden their First Amendment rights to distribute and present third-party speech. *See Moody*, 144 S. Ct. at 2399 n.3 (explaining that "requirements [that a platform post warnings] violate the First Amendment if they unduly burden expressive activity");

*Volokh v. James*, 656 F. Supp. 3d 431, 445 (S.D.N.Y. 2023) (striking down New York law requiring platforms to develop and post policies regarding third-party hate speech on their platforms).

The Ninth Circuit's recent decision in *NetChoice v. Bonta* is directly on point. There, the court affirmed an injunction against a portion of a statute "requiring [] businesses to opine on and mitigate the risk that children are exposed to harmful content online," explaining that such a requirement "regulates far more than mere commercial speech" and "falls well short of satisfying strict First Amendment scrutiny." 113 F.4th at 1119–22; *id.* at 1117 (the "report requirement clearly compels speech by requiring covered businesses to opine on potential harm to children"). The court held that imposing a duty on online platforms to speak about the risks that some of the third-party content they disseminate may be harmful to minors—and about their plans for mitigating such risks—"facially violates the First Amendment" because, in addition to "compel[ling] speech with a particular message about controversial issues," it "deputize[s] private actors into determining whether material is suitable for kids" and then "censoring speech based on its content." *Id.* at 1118, 1121.

Plaintiff's claims here confront the same constitutional problem: using state law to force Platform Defendants to identify and post warnings about third-party games that include content that may (in Plaintiff's view) be harmful to minors impermissibly compels those entities to speak and requires them to monitor and restrict access to speech based on content. As in *Bonta*, "a disclosure regime that requires the forced creation and disclosure of highly subjective opinions about content-related harms to children is unnecessary for fostering a proactive environment in which companies, the State, and the general public work to protect children's safety online." *Id.* at

1122. And state law does not "include a free-floating power to restrict the ideas to which children may be exposed." *Id*. At 1121 (quoting *Brown*, 564 U.S. at 794).

Nor can Plaintiff escape First Amendment protections by attempting to separate the Platform Defendants' supposed "conduct" in designing their platforms from the underlying content they disseminate. AC ¶¶ 31, 46, 98, 597, 607. Plaintiff does not seek to hold the Platform Defendants liable for design choices distinct from their dissemination of third-party gaming content. *Supra* § I.B.1. As the Eighth Circuit has made clear, "[s]peech is not conduct just because the government says it is," *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 752 (8th Cir. 2019), and that is no less true here. What Plaintiff characterizes as design and conduct by the Platform Defendants are in fact the platforms' editorial judgments about what third-party speech to disseminate and how to make that speech available to the public. Indeed, the Supreme Court in *Moody* rejected a materially identical attempt to recast regulation of speech as targeting only conduct, explaining that the Fifth Circuit was "wrong in concluding that . . . restrictions on the platforms' selection, ordering, and labeling of third-party posts do not interfere with expression." 144 S. Ct. at 2399. So too here, Plaintiff's suggestion that the Platform Defendants' "content choices" are "not speech" reflects "a serious misunderstanding of First Amendment precedent and principle." *Id*.

Finally, even if games themselves somehow were not protected speech, the Platform Defendants could be held liable only if they had actual "knowledge" of the speech's unlawful character and nature. *Smith*, 361 U.S. at 153; *accord Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992) (applying *Smith* to bar liability for disseminating allegedly harmful videos). Here, Plaintiff alleges only in the most conclusory and generalized fashion that the Platform Defendants "knew" that "the video game products" they "made or make[] available …

29

contained an inherent risk of abuse, addiction, and compulsive use by minors." AC ¶ 503 (Google); *see also id.* ¶¶ 336–337 (Microsoft and Meta). Such conclusory and unsupported allegations do not afford the "precision of regulation" the First Amendment demands, *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 916–17 (1982); *accord Herceg v. Hustler Mag., Inc.*, 814 F.2d 1017, 1024 (5th Cir. 1987) (explaining that "[m]ere negligence" "cannot form the basis of liability" for publishing allegedly dangerous speech).

### III. In the Alternative, Plaintiff's Claims Should Be Dismissed for Continued Failure to State a Claim.

Rather than remedy any of the deficiencies in her state law claims, Plaintiff's even more convoluted and unwieldy Amended Complaint compounds them. Plaintiff's new strategy is to rely almost entirely on impermissible group or "shotgun" pleading: every count improperly adopts the entirety of the preceding allegations, *e.g.*, AC ¶¶ 608, 628, 648, 665, 697, 717, and virtually every allegation is made against "Defendants" as an undifferentiated group, without specifying which are responsible for specific acts or omissions. Such allegations are insufficient: "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful," and "[a] complaint based on a theory of collective responsibility *must be dismissed*." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (emphasis added); *see also Moore v. Compass Group USA, Inc.*, 2022 WL 4598558, at *10 (E.D. Mo. Sept. 30, 2022) (dismissing counts based on "shotgun pleading" that "brings every conceivable claim against every conceivable defendant, resulting in a cause of action so general that it fails to put the various defendants on notice of the allegations against them") (internal citations and quotations omitted); *In re Crop Inputs Antitrust Litig.*, --- F. Supp. 3d ---, 2024 WL 4188654, at *9 (E.D. Mo. Sept. 13, 2024) (complaint "alleging actions of defendants as a general collective bloc constitutes impermissible group pleading") (internal citations and quotations omitted).

Plaintiff's pleading failure is particularly acute given the Amended Complaint's length, the number of claims and Defendants, and the paucity of specific allegations against the Platform Defendants, which combined make it impossible for the Platform Defendants to have "notice of the allegations against them." *Moore*, 2022 WL 4598558, at *10 (dismissing counts where plaintiff failed to plead "particularized elements" of claims "or point out which of the facts alleged in the Amended Complaint satisfy those elements"); *see also Miller as Next Friend for Rippeto v. City of St. Louis*, 2024 WL 1366797, at *3 (E.D. Mo. March 31, 2024) (dismissing claims where plaintiffs "fail[ed] to differentiate which acts were committed by which [d]efendant"). For example, throughout the Amended Complaint, Plaintiff fails to differentiate between the different games and platforms at issue, *e.g.*, AC ¶ 540 (alleging that "K.C. uses two or more of DEFENDANTS' [p]roducts at least three (3) hours per weekday"), fails to distinguish between the Developer and Platform Defendants and their distinct roles, *e.g.*, *Id.* ¶ 633 (alleging "DEFENDANTS designed the Products to create addictive engagement and compulsive use"), and attempts to allege matters such as fraud, knowledge, and intent as to ten separate defendants collectively, *e.g.*, *id.* ¶¶ 16, 18 (alleging "DEFENDANTS" sold games "despite having actual and/or constructive knowledge of the risk of harm" and that "DEFENDANTS acted with the intent to cause minors . . . to develop an addiction" to gaming); *id.* ¶ 42 (alleging "DEFENDANTS expressly and implied represented . . . that their products were . . . safe for foreseeable use" and that Plaintiff "relied upon DEFENDANTS' misrepresentations").

Plaintiff's decision to double down on her shotgun pleading in the Amended Complaint warrants dismissal with prejudice, especially given the overarching federal protections discussed above designed to shield the Platform Defendants against claims like these.

31

Even if the Court were to overlook these fundamental defects, however, Plaintiff's claims are deficient under Missouri law for numerous other reasons.

### A. All of Plaintiff's Claims Still Fail Because the Platform Defendants Did Not Proximately Cause K.C.'s Alleged Injuries.

Proximate (or legal) causation is an essential requirement of all of Plaintiff's claims. *See* Developers' Brief § II.A. "The requirement of proving proximate cause absolves those actors whom it would be unfair to punish because of the attenuated relation which their conduct bears to the plaintiff's injuries." *Heffernan v. Reinhold*, 73 S.W.3d. 659, 664 (Mo. Ct. App. 2002). As the Developer Defendants explain, Plaintiff fails to plead proximate causation here—especially given the role of parents in making decisions on behalf of minors regarding gaming access and purchases. *See* Developers' Brief § II.A. But as to the Platform Defendants, Plaintiff still fails to plausibly plead that their alleged conduct in allowing access to certain third-party video games and facilitating payments for in-game transactions within such games was the legal cause of K.C.'s alleged injuries.

"The test for establishing proximate cause is whether the negligence is an efficient cause which sets in motion the chain of circumstances leading to the plaintiff's injuries or damages." *Freight House Lofts Condo Ass'n v. VSI Meter Servs., Inc.*, 402 S.W.3d 586, 599 (Mo. Ct. App. 2013) (cleaned up); *Lawton*, 2024 WL 2318623, at *6 (dismissing negligence and product liability claims for failure to plausibly allege causation). As numerous courts have held, simply making third-party content available or helping disseminate it is not enough to allege proximate cause of injuries arising from that third-party content. *See Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) ("Doubtless craigslist plays a causal role in the sense that no one could post a discriminatory ad if craigslist did not offer a forum. That is not, however, a useful definition of cause."); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 625 (6th Cir.

2019) (affirming dismissal for lack of causation in case against online platforms alleging liability from terrorist material they allegedly disseminated); *Fields v. Twitter, Inc.*, 881 F.3d 739, 749 (9th Cir. 2018) (similar).

As with the original complaint, the lack of any connection between any alleged injury and the Platform Defendants' alleged conduct is illustrated by Plaintiff's allegation that K.C. plays the third-party games across Microsoft's, Google's, and Meta's platforms. AC ¶¶ 532–533. Plaintiff's theory of injury thus effectively treats the Platform Defendants as fungible, which only highlights her failure to allege a causal link between any specific Platform Defendant and K.C.'s alleged addiction—apart from the fact that they happen to make third-party games accessible to the public. *See Roca Labs, Inc. v. Consumer Opinion Corp.*, 2014 WL 6389657, at *7 (M.D. Fla. Nov. 16, 2014) (no causation where harm stemmed from content posted by others "rather than from misrepresentations made by Defendants about their services").

Nor do Plaintiff's microtransaction allegations, *e.g.*, AC ¶¶ 29–31, 107, 124–135, establish proximate causation. Any plaintiff must allege facts linking her damages to the conduct of, or a product supplied by, the defendant. *See Kutilek v. Union Pac. R.R.*, 454 F. Supp. 2d 871, 876 (E.D. Mo. 2006) (dismissing tort claims where plaintiff's allegations bore an "attenuated relation" to injury). Here, while Plaintiff continues to assert highly generalized allegations about purchases, nowhere does she actually allege that K.C. used any of the Platform Defendants' services to purchase in-game content or to engage in other "microtransactions" pertaining to the third-party games. Plaintiff vaguely claims that K.C. has spent "large sums" of money on "in-game microtransactions and downloadable products" that are "available in and accessible through" unspecified Defendants' "Products" (AC ¶ 544)—but nowhere does she link the alleged payments to the Platform Defendants, much less to microtransactions made on their services. *Id.* That is not

enough to plead causation. *E.g.*, *Ochoa v. Zeroo Gravity Games LLC*, 2023 WL 4291974, at *8 (C.D. Cal. Feb. 1, 2023) (no causation for claim against online gaming app where plaintiff "did not personally download it or make a purchase within it").

**B.    The Amended Complaint Does Not Cure the Other Defects in Plaintiff's Product Liability Claims.**

Plaintiff's product liability claims (Counts I–IV)—which allege Design Defect (Counts I and III) and Failure to Warn (Counts II and IV)—still fail for many of the same reasons the Platform Defendants articulated in the prior Motion to Dismiss: beyond being barred by Section 230 and the First Amendment, and failing for lack of causation, each claim continues to lack essential elements.

1.    <u>Plaintiff Cannot State a Product Liability Claim Because the Platform Defendants' Services Are Not "Products."</u>

Nothing in the Amended Complaint changes that the Platform Defendants offer not products, but services, which are not subject to Missouri product liability law. As the Developer Defendants explain, *see* Developers' Brief § II.B, a "product" is "tangible personal property distributed commercially for use or consumption." Restatement (Third) of Torts: Prod. Liab. § 19 (Am. L. Inst. 1998). Online platforms that facilitate access to digital games are not "tangible personal property" any more than the games are.[9] The Platform Defendants offer platforms and services, similar to how a lending library or bookstore makes books available to interested readers, and to which product liability law of course does not apply. *See Hobbs v. Boy Scouts of Am., Inc.*, 152 S.W.3d 367, 372 (Mo. Ct. App. 2004) (affirming dismissal of claims because "[p]roduct

---

[9] Notably, although Plaintiff alleges that K.C. accessed the online platforms through physical devices—including Xbox One, Xbox Series S, Meta Quest, and Android devices (AC ¶ 532)—neither the Complaint nor the Amended Complaint allege that those devices are themselves defective, and her claims are not premised on any physical attributes of those devices.

liability theories do not apply to services"); *Hunt v. Guarantee Elec. Co. of St. Louis*, 667 S.W.2d 9, 12 (Mo. Ct. App. 1984) (the "policy reasons justifying imposition of strict tort liability are not present . . . where defendant [only] rendered professional services"). Indeed, courts repeatedly dismiss product liability claims against online platforms for this reason. *See, e.g.*, *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1010–11 (C.D. Cal. 2022) (dismissing product liability claims because Airbnb's platform "is more akin to a service than to a product"); *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 399 (S.D.N.Y. 2018) (granting summary judgment to Amazon on product liability claim because the online marketplace was "a provider of services"); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *1, *4 (C.D. Cal. Feb. 3, 2023) (concluding "Snapchat is more like a service than product" and dismissing product liability claims); *Grossman v. Rockaway Twp.*, 2019 WL 2649153, at *4, *15 (N.J. Super. Ct. June 10, 2019) (dismissing product liability claims against maker of Snapchat where allegations failed to establish Snapchat as a "product"). Plaintiff offers no justification for a different outcome here.

2.  Plaintiff's Product Liability Claims Impermissibly Target the Platform Defendants' Dissemination of Information.

Plaintiff's product liability claims also fail because they do not target any actual alleged defect in the platforms, but rather the Platform Defendants' dissemination of information. Product liability law does not apply when a "plaintiff's grievance . . . is with the information" transmitted—*i.e.*, the third-party games—and "not with the tangible medium" itself. Restatement (Third) of Torts: Prod. Liab. § 19 cmt. D. This limitation on the breadth of product liability claims is necessary to prevent chilling speech and to prevent plaintiffs from simply pleading around the First Amendment, as discussed above. *See, e.g.*, *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1035 (9th Cir. 1991) ("We accept the risk that words and ideas have wings we cannot clip[.]"). Just as a publisher cannot be liable under product liability law for injuries allegedly caused by an

35

"addictive" or otherwise harmful book, *id*., online platforms cannot be liable for making video games available where the alleged injury purportedly flows from the expressive content within those games. *See, e.g.*, *Sanders v. Acclaim Ent., Inc*., 188 F. Supp. 2d 1264, 1279 (D. Colo. 2002) (dismissing product claims against developers and distributors of violent video games).

*Estate of B.H. v. Netflix, Inc*., 2022 WL 551701 (N.D. Cal. Jan. 12, 2022), *aff'd*, 2024 WL 808797 (9th Cir. Feb. 27, 2024), is instructive. There, the Court considered product liability claims arising from Netflix's production, dissemination, and recommendation of a television show that allegedly caused the plaintiff's suicide. *Id*. at *3. Despite the plaintiff's allegation that Netflix "used its sophisticated, targeted recommendation systems to push the [s]how" on minors, *Netflix*, No. 4:21-cv-06561 (N.D. Cal.), ECF No. 22 ¶ 6, the court held the claim was impermissibly "premised on the content and dissemination of the show," reasoning that there is "no strict liability for books, movies, or other forms of media." 2022 WL 551701, at *3. Just so here: product liability law does not allow Plaintiff to hold the Platform Defendants liable for disseminating "addictive" or "defective" speech. This too is a defect that persists despite the Platform Defendants' raising it in their prior motion.

It is inconsequential that the Amended Complaint now labels the platforms as "video gaming products," or describes the Xbox, Android devices, and Meta Quest devices as "products." *E.g.*, AC ¶¶ 3, 79, 120, 336, 484, 533. Plaintiff's wordsmithing does nothing to change the fact that all of Plaintiff's claims remain centered on the content of video games disseminated by the relevant platforms—not the design of the platforms themselves or alleged defects in gaming devices used by millions of people every day. *See Netflix*, 2022 WL 551701, at *3 (holding that plaintiffs' strict liability claim was premised on the dissemination of content because "[w]ithout the content, there would be no claim.")

36

3. Even If Product Liability Law Applied, Plaintiff Has Not Alleged Any Defect with Platform Defendants' Services.

Even if the Court could extend product liability law to apply to services, Plaintiff's product liability claims would still fail because she still does not identify any supposed design defect in any of the Platform Defendants' services. As explained in *Hartman v. L-3 Communications EOTech, Inc.*, 2018 WL 4737261, at \*3 (E.D. Mo. Oct. 2, 2018), a plaintiff seeking to state a design defect claim under Missouri law must allege that "the product in question was in fact defective." Plaintiff makes vague and conclusory allegations that the Platform Defendants designed their platforms "to attract users to purchase games and in-game content" and to "addict and harm users." AC ¶¶ 320, 331 (Microsoft); *id.* ¶¶ 369, 381 (Meta); *id.* ¶¶ 493, 496 (Google). As to Google, Plaintiff does not identify a *single* design feature *of Google Play* that supposedly makes the platform itself addictive, let alone defective, much less a design feature that allegedly caused the purported gaming disorder from which K.C. claims to suffer.

Plaintiff's conclusory allegations about Microsoft's and Roblox's platforms fare no better. Plaintiff gestures to the "everchanging, constantly rotating library of games" and "social aspects" on Microsoft's Xbox platform, *id.* ¶ 325, and the existence of "new challenges, maps, and characters," "social gaming design," and "competitive environment whereby players are presented with microtransactions and in-game product purchases" on the Roblox platform, *id.* ¶¶ 251–253. These allegations simply underscore that Plaintiff's product liability claims turn on the content of the third-party games—the various "in-game products" and games in the "libraries." They do nothing to identify any actual purported *defects* in Microsoft's or Roblox's platforms. And Plaintiff fails to allege that K.C. ever used any social communication function, let alone was addicted to it.

The same is true of Plaintiff's allegations that Meta designed Quest headsets "with psychologically addictive features," including "immersive VR experiences." *Id.* ¶ 377. Plaintiff

alleges only that K.C. had those "experiences" through the third-party games, and she does not identify any specific feature of the Quest headset that contributed to K.C.'s alleged addiction, as opposed to content and features from the third-party games K.C. played on Meta's platform.[10]

Because the Amended Complaint's product liability claims remain legally deficient, they should be dismissed. *See Lawton v. Hyundai Motor Am., Inc.*, 2024 WL 2318623, at *7 (W.D. Mo. May 20, 2024) (dismissing product liability claims at the pleading stage).

### C. Plaintiff Still Does Not State a Negligence Claim.

The Amended Complaint adds no new allegations to overcome the multiple dispositive problems with Plaintiff's negligence claim that the Platform Defendants detailed in their prior motion—in addition to the lack of causation discussed above, she still does not plead any applicable duty, much less one that any Platform Defendant breached.

### 1. Missouri Law Imposes No Duty To Protect From Or Warn About Third-Party Harms.

Like her prior Complaint, Plaintiff's Amended Complaint fails to identify any applicable duty that Platform Defendants could have breached. "In order to assert a claim of general negligence, a party has to plead facts showing the existence of a duty on the part of the defendant." *Lockhart v. Carlyle*, 585 S.W.3d 310, 316 n.10 (Mo. Ct. App. 2019). "Whether a duty exists is purely a question of law." *Doe by & through Doe v. Ozark Christian Coll.*, 579 S.W.3d 220, 222 (Mo. Ct. App. 2019) (cleaned up). Plaintiff's negligence-based claims—Negligent Design (Count

---

[10] Plaintiff baselessly attempts to extend these allegations to Google, apparently based on allegations that the Meta Quest runs on Google's Android operating system. AC ¶¶ 90, 353–354, 377-380. But there are no allegations that Google played any role in the design of the Quest or the games that K.C. allegedly played on the device, or that the operating system itself was defective or contributed to K.C.'s alleged addiction.

III); Negligent Failure to Warn (Count IV); and Ordinary Negligence (Count V)—fail because the Platform Defendants do not owe a legal or statutory duty of care to Plaintiff.

As explained in the Developers' Brief (§ II.C), those who create or publish expressive speech owe no common law duty to protect the public from, or warn the public about, the allegedly harmful effects of their protected expression. That principle alone warrants dismissal of the negligence claims against the Platform Defendants.

There is another reason why the Platform Defendants owe no common law duty to Plaintiff: Foreseeability is the "touchstone" for the creation of a duty, *Wieland v. Owner-Operator Servs.*, *Inc.*, 540 S.W.3d 845, 848 (Mo. 2018), and there generally is no duty "to control the conduct of a third person to prevent him from causing . . . harm to another" because that conduct is rarely foreseeable. Restatement (Second) of Torts § 315; *see also Earley v. Dunn*, 670 S.W.3d 47, 50 (Mo. Ct. App. 2023) ("the general rule is that there is no duty to protect against the criminal acts of third parties because such events are rarely foreseeable"); *Johnston v. Warren County Fair Ass'n, Inc.*, 110 F.3d 36, 38 (8th Cir. 1997) (a business owner "generally has no duty to protect business invitees from intentionally harmful acts of third parties"); *Hammers v. Farm Bureau Town & Country Ins. Co. of Missouri*, 792 S.W.2d 19, 21 (Mo. Ct. App. 1990) (applying Restatement § 315 in finding no "duty to control the conduct of a third party"). But even where the risk of third-party harm may be foreseeable, a duty does not arise in the absence of "some right or obligation to control the activity which presents the danger of injury." *Pippin v. Hill-Rom Co., Inc.*, 615 F.3d 886, 890 (8th Cir. 2010) (applying Missouri law).

The principles that limit tort duties with respect to third-party harm apply with even greater force to the third-party speech available on the Platform Defendants' services. After all, no intermediary service "could function if a duty of care was created" anytime the service

"facilitate[d]" the dissemination of others' "content." *Dyroff*, 934 F.3d at 1101 (citing *Klayman*, 753 F.3d at 1359–60).

Missouri law recognizes limited exceptions to this rule, including where the legislature imposes a particular duty in specific circumstances, *Doe v. Ozark Christian Coll.*, 579 S.W.3d at 222, or where a "special relationship or special circumstances" exist. *Lawton*, 2024 WL 2318623, at *5 (noting that "special relationship" exists when "a party entrusts himself to the protection of another and relies upon that person to provide a place of safety"); *see also Early*, 670 S.W.3d at 51 (special relationship limited to "those of innkeeper-guest, common carrier-passenger, school-student, and sometimes employer-employee" (cleaned up)). But there is no legislatively created duty alleged here, and Plaintiff does not and cannot plausibly allege a special relationship.

The Platform Defendants publish a broad array of games and other applications, the vast majority of which are unrelated to Plaintiff's allegations, and the few games at issue here are created by third parties, not the Platform Defendants. That cannot possibly suffice to create a special relationship under Missouri law. Indeed, courts regularly hold in cases involving video game apps that online platforms do not owe a duty of care to their users or the public at large regarding potentially harmful third-party content. *See, e.g.*, *Ginsberg*, 586 F. Supp. 3d at 1009 ("Google does not owe a general duty to the public base[d] on its operation of the Play Store"); *Klayman*, 753 F.3d at 1359–60 (no special relationship between social media platform and its users); *Sanders*, 188 F. Supp. 2d at 1275 (game developers and platforms owe no duty to third parties with respect to harmful game content).

The contrary result would impose a duty to protect that is all but impossible to administer without platforms severely curtailing the protected speech they offer. Virtually every online platform that offers games (or other content) would have to make difficult, subjective, and

40

contested decisions about which third-party expression is too potentially enticing, engaging, or "addictive"—and then restrict access to such content on pain of broad-based tort liability. Nothing in Missouri law authorizes that result, and Plaintiff's unprecedented approach would put state law into direct conflict with the bedrock principles of federal law, including the First Amendment, as discussed above.

2.  Plaintiff's Negligence *Per Se* Theory Fails.

While the Amended Complaint abandons Plaintiff's independent claim for negligence *per se*, it continues to vaguely allege that "each DEFENDANT is *per se* negligent" because they purportedly "have violated statutory and regulatory law, as identified herein." AC ¶ 687. The only statutory claim asserted in the Amended Complaint is an alleged violation of the MPPA. *See* AC Count VII. But as discussed below (*infra* § IV) and in the Developers' Brief (§ II.E), Plaintiff does not allege conduct that violated that statute or caused injury to Plaintiff as a result of any such violation, and her allegations remain nowhere close to satisfying Rule 9(b)'s heightened pleading standard governing fraud-based claims under such consumer-protection laws. *See Martinez v. Kilroy Was Here LLC*, 551 S.W.3d 491, 496 (Mo. Ct. App. 2018) (negligence *per se* claim requires that "the defendant violated a statute" and "the violation of the statute was the proximate cause" of a kind of injury "the statute was designed to prevent").

To the extent the slapdash Amended Complaint continues to claim negligence *per se* based on alleged violations of COPPA, 15 U.S.C. § 6501 *et seq*—which is far from clear[11]—those allegations fail for the reasons set out in the Developers' Brief § II.D. Additionally, the Federal Trade Commission ("FTC") has made clear that "platforms, such as Google Play or the App Store,

---

[11] Plaintiff no longer references COPPA in the Amended Complaint or expressly alleges that "Defendants" violated the statute, but the Amended Complaint carries over vague allegations concerning the collection of children's data and alleged violations of various COPPA regulations.

that offer access to someone else's child-directed content" can be liable only if they had "actual knowledge that they [were] collecting personal information directly from users of a child-directed site." 78 Fed. Reg. 3972, 3997–98 (Jan. 17, 2013). Plaintiff does not allege any facts indicating that any Platform Defendant collected personal information from K.C, much less that any such collection was undertaken with actual knowledge of K.C.'s age at the time and without parental consent. *See* AC ¶¶ 681–689;[12] *see also* Federal Trade Commission, Complying with COPPA: Frequently Asked Questions (July 2020), FAQ A.12 and D.4 (operators can rely on the age information provided by a user in the age screen);[13] *N.M. ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1116 (D.N.M. 2020) (dismissing COPPA claim for failure to plausibly allege actual knowledge).

Finally, Plaintiff does not address her fatal causation problem. Even if Plaintiff had pled an MPPA or COPPA violation (which she has not), the Amended Complaint still does not offer any facts to show how those actions (which focus on collection of personal information from children or supposedly false advertising) resulted in K.C.'s alleged addiction to video games. Plaintiff's allegations are no more than a "textbook legal conclusion" that cannot plausibly state a claim. *DeCastro v. Hot Springs Neurology Clinic, P.A.*, 107 F.4th 813, 816 (8th Cir. 2024).

---

[12] The only purported COPPA violations Plaintiff hints at concern the Platform Defendants' alleged facilitation of game-related transactions (not collection of personal information), AC ¶¶ 260, 340, 393, 508, and thus are not covered by the statute. Moreover, the Complaint does not allege K.C. engaged in any specific transactions. Beyond that, Plaintiff does not include any factual allegations that Defendants collected K.C.'s personal information, let alone did so after having actual knowledge that K.C. was under 13 and without parental consent.

[13] Available at https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions.

**IV.    The Amended Complaint Does Not Cure the Defects in Plaintiff's Fraud-Based Claims.**

Plaintiff's fraud-based claims (Counts VII–IX) are subject to Rule 9(b)'s heightened pleading standard. *See, e.g.*, *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (allegations of fraud, including fraudulent concealment, must be pleaded with particularity); *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013) (misrepresentation); *Blake v. Career Educ. Corp.*, 2009 WL 140742, at *2 (E.D. Mo. Jan. 20, 2009) (MMPA); *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, 687 F. Supp. 2d 897, 907 (W.D. Mo. 2009) (omission); *In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1535 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) (concealment). That requires Plaintiff to include specifics such as "the time, place and contents of the false representations, the identity of the individual who made the representations and what was obtained thereby." *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 795 F. Supp. 2d 874, 877 (D. Minn. 2011) (cleaned up), *aff'd*, 678 F.3d 659 (8th Cir. 2012); *U.S. ex rel. Joshi v. St Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (Rule 9(b) requires "the 'who, what, where, when, and how' of the alleged fraud"). Just like the original complaint, the Amended Complaint makes no specific allegations that would meet these pleading requirements, so all of Plaintiffs' fraud-based claims should be dismissed.

**A.    Plaintiff's Misrepresentation Claims (Counts VII–IX) Still Do Not Satisfy Rule 9(b).**

Besides its conclusory allegations, the Amended Complaint fails to identify a single statement made by any Platform Defendant with an explanation of the falsity of that statement, as required under Rule 9(b). Under Missouri law, the elements of a fraudulent misrepresentation claim are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person

in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438–39 (8th Cir. 2013). A negligent misrepresentation claim differs only in that it requires "the information [be] false" "because of the speaker's failure to exercise reasonable care." *Dancin Dev., L.L.C. v. NRT Missouri, Inc.*, 291 S.W.3d 739, 744 (Mo. Ct. App. 2009). The Missouri Merchandising Practices Act ("MMPA") similarly declares "fraud," "deception," "misrepresentation," "or the concealment . . . or omission of any material fact in connection with the sale or advertisement of any merchandise" to be unlawful. Mo. Ann. Stat. § 407.020. To state an MMPA claim, a plaintiff must allege that she "(1) purchased merchandise from the defendant; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the MMPA." *Hennessey v. Gap, Inc.*, 86 F.4th 823, 827 (8th Cir. 2023) (alterations adopted).

For all such claims sounding in fraud, Plaintiff must "plead such facts as the time, place, and content of the defendant[s'] false representations, as well as the details of the defendant[s'] fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi*, 441 F.3d at 556. "[E]xpressions of opinion are insufficient to authorize a recovery for fraudulent misrepresentation because such expressions are deemed not to be material to a transaction." *Clark v. Olson*, 726 S.W.2d 718, 720 (Mo. 1987) ("Puffing of wares, sales propaganda, and other expressions of opinion are common, are permitted, and should be expected."); *see also Tucker v. Gen. Motors LLC*, 58 F.4th 392, 396 (8th Cir. 2023) ("it has been repeatedly held that advertising constituting 'mere puffery' cannot form the basis of an MMPA claim").

Plaintiff fails to identify *any* allegedly misleading statement whatsoever from Google or Meta, which by itself warrants dismissal of all her fraud-based claims against those defendants. To the extent the Amended Complaint vaguely asserts, without detail, that Google and Meta misrepresented their services as "safe for use by minors," AC ¶¶ 387, 505, it fails to identify a single specific instance of marketing or any other statement, where any such statement was made, when it was made, or by whom it was made—whether in connection with Plaintiff's claims for common law misrepresentation or under the MMPA. *See, e.g.*, *id.* at 221–223 ¶ 74, 226–227 ¶ 720[14]; *Goldman v. Tapestry, Inc.*, 501 F. Supp. 3d 662, 666 (E.D. Mo. 2020) (quoting *Schaller Telephone Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)) ("[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy [Rule 9(b)].").

As to Microsoft and Roblox, Plaintiff identifies only one statement by each—that the Xbox Store is "safer for the whole family," AC ¶ 334, and that "Roblox provides a fun, supportive, and educational space where your child's imagination can thrive," *id.* ¶ 257—but she does not explain why those statements were false, as required under Rule 9(b). *See, e.g.*, *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 744 (8th Cir. 2002) (fraud claims insufficiently pleaded where plaintiff did not allege "why [representation] was false when made"). Nor could she. As courts recognize, generalized statements of opinion like this, which cannot be proven true or false, are not actionable as a matter of law and are protected by the First Amendment. *See Lowe* v. *SEC*, 472 U.S. 181, 210 n.58 (1985) (recognizing "expression of opinion about a commercial product" is "protected by the First Amendment"); *see also J&B Tankers, Inc. v. Navistar Int'l Corp.*, 539 F. Supp. 3d 955, 963

---

[14] The Amended Complaint skips from ¶ 716 to ¶ 71 on page 221, and then from ¶ 84 to ¶ 717 on page 226. To avoid confusion, page numbers are cited for references to those pages of the Amended Complaint.

(E.D. Ark. 2021) (statements about engine's safety were not actionable because they were "puffery, not false representation"); *Greater Hous. Transp. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 683 (S.D. Tex. 2015) (statement that Uber is the "safest ride on the road" was "non-actionable puffery").

Plaintiff's claim independently fails for lack of reliance. To state a misrepresentation claim, Plaintiff must allege that she in fact relied on the alleged fraudulent representations as specified, and what she did in reliance. *See Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 423 (8th Cir. 2020) ("Parties alleging fraud must plead reliance with sufficient particularity to state a plausible claim of justifiable reliance" (cleaned up)); *Stein v. Novus Equities Co.*, 284 S.W.3d 597, 603 (Mo. Ct. App. 2009) (affirming dismissal of fraudulent and negligent misrepresentation claims where "[p]laintiffs' petition failed to set forth any set of facts which, if proven, would establish that they relied on [d]efendants' alleged misrepresentations").

Here, however, the Amended Complaint does not allege that Plaintiff (or K.C.) read or heard any purported misrepresentations from the Platform Defendants, let alone what they were, or what Plaintiff supposedly did to rely on them to her detriment. Instead, the sum total of the Complaint's reliance allegations is simply to state a conclusion:

- "Plaintiffs relied upon [Defendants'] representations in purchasing and/or using the Products and Carey Courtright relied upon Defendants' misrepresentations regarding the safety and educational benefit of the Products in allowing K.C. to use those Products . . . ." AC ¶ 42.

- "Plaintiffs relied to their detriment on Defendant[s]' deceptive and unconscionable acts, including Defendants' respective misrepresentations and deceptions, in deciding to use and how to use Defendants' gaming products." *Id.* at 225 ¶ 80.

- "Plaintiffs reasonably relied on Defendants' misrepresentations within each Defendant's product to make several in-game purchases that actually had little to no value to Plaintiffs." *Id.* ¶ 746.

- "Plaintiffs relied on Defendants' material misstatements and false representations in deciding whether to use, or continue to use, Defendants' products, including Defendants' material misstatements and false representations about Minecraft (including Minecraft Education), Xbox Network (including Xbox Live, Xbox Game Pass, Xbox Cloud Gaming, and Xbox Store), Latitude 3190 laptops, Roblox, and iPhone (including App Store) regarding the safety and educational benefit of those products when used by minors." *Id.* ¶ 766.

- "Plaintiffs relied upon Defendants' false statements and misrepresentations in deciding to use Defendants' [p]roducts. Likewise, K.C. relied on Defendants' false statements and misrepresentations in conjunction with in-game purchases and Defendants' deceptive microtransaction mechanisms, including the use of fake 'friends' to induce K.C. into spending money." *Id.* ¶ 778.

Such conclusory statements are not sufficient to allege actual reliance. *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 321–22 (8th Cir. 1997) (affirming dismissal of fraud claims and holding that Rule 9(b) requires more than the conclusory statement that plaintiff "relied").

### B. Plaintiff Still Does Not State Any Claim for Deceit/Fraudulent Omission or Nondisclosure or Fraudulent Concealment (Counts VII–VIII).

The Amended Complaint again fails to allege specifically what material facts Platform Defendants concealed that they had a duty to disclose. Claims for fraudulent omission and concealment require that the plaintiff satisfy the same elements as a fraudulent misrepresentation claim. *Zubres Radiology v. Providers Ins. Consultants*, 276 S.W.3d 335, 340 (Mo. Ct. App. 2009) ("The same nine elements required to establish fraud by an affirmative misrepresentation must be proven in a fraud by silence claim." (cleaned up)). "Silence may amount to a representation, constituting the first element of fraudulent misrepresentation, if the party sought to be held accountable for fraud (1) conceals material facts and (2) has a legal duty to disclose such facts." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1064 (8th Cir. 2005). "However, before silence may add up to misrepresentation, the silent party must have a duty to speak, and that duty arises when the silent party is a fiduciary or possesses superior knowledge."

47

*Nigro v. Rsch. Coll. Of Nursing*, 876 S.W.2d 681, 686 (Mo. Ct. App. 1994); *see also Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. 1993).

Here, Plaintiff still fails to identify any facts that the Platform Defendants supposedly concealed which Plaintiff had no ability to discover. Nor does Plaintiff identify any basis for concluding that the Platform Defendants were duty-bound to disclose any such (unpleaded) facts. In the end, the Amended Complaint does not allege that the Platform Defendants were in possession of knowledge "not within the fair and reasonable reach" of Plaintiff. *See Patterson Oil Co. v. Verifone, Inc.*, 2016 WL 6149594, at *14 (W.D. Mo. Oct. 19, 2015) ("A duty to speak arises when . . . one of the parties has superior knowledge not within the fair and reasonable reach of the other party." (cleaned up)).

While that alone is sufficient to dismiss Plaintiff's omission-based claim, it is notable that the Amended Complaint itself contradicts the notion that Plaintiff had no way to discover the alleged basis of this claim, as every citation about the purportedly addictive nature of video games pled by her appears to be based on publicly available information. *E.g.*, AC ¶¶ 509–530 (discussing literature). Where, as here, Plaintiff has reasonable access to the allegedly concealed information, the information cannot have been fraudulently omitted or concealed. *See, e.g.*, *In re Gen. Motors Corp.*, 966 F. Supp. at 1535 (requiring plaintiff asserting fraudulent omission claim "to show that he exercised due diligence to discover the information" where such information was "not within plaintiffs' reach"); *Batek v. Curators of Univ. of Missouri*, 920 S.W.2d 895, 900 (Mo. 1996) (dismissing fraudulent concealment claim where plaintiff "does not aver that she exercised due diligence or why due diligence did not lead or could not have le[d] to discovery of facts and the cause of action"); *see also Blue Cross & Blue Shield N.C. v. Rite Aid Corp.*, 519 F. Supp. 3d 522

(D. Minn. 2021) (finding no duty to disclose for fraudulent concealment claims when the [plaintiff] has access to the material facts).

## V.     Plaintiff's Remaining Claims Against the Platform Defendants Still Fail.

Finally, Plaintiff's claims for IIED (Count VI), conspiracy (Count X), in-concert liability (Count XI), and loss of consortium (Count XII) fail for the same reasons detailed by the Developer Defendants, *see* Developers' Brief § II.F–H, in addition to the lack of causation and duty discussed above, *supra* §§ III.A, C.1. The Amended Complaint adds no allegations that would rescue those claims.

## VI.    The Amended Complaint Should Be Dismissed with Prejudice.

The Amended Complaint fails to cure the fatal defects addressed in the Platform Defendants' first motion to dismiss. Because those defects mar all of Plaintiff's legal theories and cannot be cured by further amendment, the Amended Complaint should be dismissed with prejudice. *See GWG DLP Funding V, LLC v. PHL Variable Ins. Co.*, 54 F.4th 1029, 1037 (8th Cir. 2022) (affirming dismissal with prejudice when "plaintiffs have not shown . . . how their claims can be amended to save them . . .""); *H & Q Properties, Inc. v. Doll*, 2014 WL 2919139, at *9 (D. Neb. June 26, 2014), *aff'd*, 793 F.3d 852 (8th Cir. 2015) (concluding that further amendment "would be futile" because plaintiffs' proposed second amended complaint "fails to cure the deficiencies of the Amended Complaint, despite Plaintiffs being made aware of the potential deficiencies").

## CONCLUSION

For these reasons, as well as those set out in the Developers' Brief, which the Platform Defendants incorporate as set forth above, all the claims asserted against the Platform Defendants should be dismissed with prejudice.

Dated: October 8, 2024

Respectfully submitted,

*/s/ James D. Lawrence*

Robert P. Berry, #46236 (MO)
BERRY SILBERBERG STOKES PC
16150 Main Circle Drive, Suite 120
St. Louis, Missouri 63017
Telephone: (314) 480-5881
Facsimile: (314) 480-5884
rberry@berrysilberberg.com

Gary S. Feinerman (Pro Hac Vice)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
gary.feinerman@lw.com

Michael H. Rubin (Pro Hac Vice)
Melanie M. Blunschi (Pro Hac Vice)
LATHAM & WATKINS LLP
5050 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
michael.rubin@lw.com
melanie.blunschi@lw.com

*Attorneys for Defendant Meta Platforms, Inc.*

Bryan Hopkins, MO Bar # 45896
HUSCH B LACKWELL LLP
8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
Telephone: (314) 480.1500
Facsimile: (314) 480.1505
Bryan.Hopkins@huschblackwell.com

Behnam Dayanim, (Pro Hac Vice)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
2100 Pennsylvania Ave., N.W.
Washington, DC 20037
Telephone: (202) 339-8400
bdayanim@orrick.com

Christopher J. Schmidt, MO Bar # 53362
Kevin H. Jenco, MO Bar # 74056
BRYAN CAVE LEIGHTON PAISNER LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
christopher.schmidt@bclplaw.com
kevin.jenco@bclplaw.com

James D. Lawrence, MO Bar # 53411
BRYAN CAVE LEIGHTON PAISNER LLP
1200 Main Street, Suite 3800
Kansas City, Missouri 64105
Telephone: (816) 374-3200
Facsimile: (816) 374-3300
jim.lawrence@bclplaw.com

Brian M. Willen (Pro Hac Vice)
Jeremy Auster (Pro Hac Vice)
WILSON SONSINI GOODRICH &
ROSATI
1301 Avenue of the Americas, #40
New York, NY 10019
Telephone: (212) 453-2862
bwillen@wsgr.com
jauster@wsgr.com

*Attorneys for Defendant Google LLC*

Christopher P. Gramling, MO Bar #50218
Cailynn D. Hayter, MO Bar #70110
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
cgramling@shb.com
chayter@shb.com

Kathryn Cahoy (Pro Hac Vice)
COVINGTON & BURLING LLP

David P. Fuad, (Pro Hac Vice)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
355 S. Grand Ave., Suite 2700
Los Angeles, California 90071
Telephone: (213) 629-2020
dfuad@orrick.com

*Attorneys for Defendant Roblox
Corporation*

3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4735
kcahoy@cov.com

David Sneed (Pro Hac Vice)
Gary M. Rubman (Pro Hac Vice)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
dsneed@cov.com
grubman@cov.com

Ambika Kumar (Pro Hac Vice)
Xiang Li (Pro Hac Vice)
DAVIS WRIGHT TREMAINE LLP
920 5th Ave., Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 757-8030
ambikakumar@dwt.com
xiangli@dwt.com

Adam S. Sieff (Pro Hac Vice)
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa St., 24th Floor
Los Angeles, CA 90017-2566
Telephone: (213) 633-8618
adamsieff@dwt.com

*Attorneys for Defendant Microsoft
Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of October, 2024, a true and correct copy of the

foregoing was filed with the Clerk of Court using the CM/ECF system, which provided

electronic service to all counsel of record.

*/s/ James D. Lawrence*

Attorney for Google LLC